(79 N. W. Rep. 993.)

---

Edgar A. Howser *vs.* J. A. Pepper.

Opinion filed July 1, 1899.

### Election Contest Before District Court.

Section 566, Rev. Codes, relating to the trial of election contests

by the District Court, construed, and *held*, that said section does not confine the jurisdiction of the District Court to try election contests to a limited period. *Held*, further, that the purpose of said section is to create a speedier method of trying such contests than that afforded by the procedure applicable to ordinary civil cases. *Held*, further, that the jurisdiction of the District Court to try election contests, when acquired by service of the notice of contest, continues until such contest is tried or dismissed.

### Best Evidence—Original Ballots.

The original ballots cast at an election are the best evidence to determine the result of such election.

### Ballots Tampered With—Result.

Such ballots continue as the best evidence unless it appears that the officers charged with their custody have so kept them that there is a reasonable probability that they have been tampered with.

### Official Canvass Not Impeached by Ballots.

When it appears that ballot boxes have not been kept by the person legally charged with their custody, and that they have been exposed to the reach of unauthorized persons for a considerable time, the ballots lose their character as the best evidence, and cannot be allowed to impeach the official canvass.

### Name of Candidate Written or Pasted on Ballot.

When the name of a person is written or pasted upon the official ballot opposite the office to be voted for, it should be counted as a vote for such person for that office, even though there is no mark in the square opposite such name.

### Stamped Ballots—Minus Inspector's Initials.

Ballots which do not have the precinct stamp and initials of the inspector are declared to be void by section 524, Rev. Codes, and should not be counted.

### Marking Within Squares.

Section 491, Rev. Codes, as amended, which provides the methods by which the elector may indicate his choice of candidates, construed, and *held*, that said section, so far as it relates to marking within the squares, is mandatory, and that marks outside the squares are not legal marks, and are not to be counted or considered for the purpose of gathering the intention of the voter.

### Indication of Voter's Choice of Candidate—When Given Effect.

A ballot on which the elector has marked a party square, and has marked the name of a candidate for an office in the opposition ticket, and has not marked the name of the candidate for such office on his party ticket by an individual mark, thus clearly expresses his intention to vote for the person whose name he has marked, and not for his party candidate, which intention must be given effect by counting it for the person whose name is so marked.

### Disfiguration of Ballot—Presumption.

Where a ballot contains other than legal marks, such marks will be presumed to have been innocently or unintentionally made, and such ballot will be counted, unless it appears from the marks themselves, or by evidence aliunde, that they were intended as distinguish-

ing marks; and whether a ballot which has distinguishing marks will be held void in the absence of a statute so declaring not decided.

## Ballot Marked by Straight Line Instead of Cross.

Section 491, Rev. Codes, as amended, only requires a mark in the square at the top of the party ticket, or "a mark or cross" in the square opposite the names of candidates. *Held*, that a ballot which is only marked with a single straight mark in the party square should be counted.

## Tie—Determined by Lot—Certificate of Election.

Where an election for a county office results in two or more persons having an equal number of votes for the same office, neither one of such persons is entitled to be declared elected by the canvassing board until the result of such election is determined by lot, upon the notice and in the manner provided for in section 528, Rev. Codes, relating to the duty of the county auditor in case of tie votes; and a certificate of election issued prior to such determination is void.

Appeal from District Court, Nelson County; *Fisk, J.*

Action by Edgar A. Howser against J. A. Pepper. Judgment for defendant, and plaintiff appeals.

Reversed.

*Templeton & Rex,* for appellant.

The court below erred in sustaining objections to the admissibility in evidence of the ballots from Lee and Center townships. The true rule is as stated in *Sone* v. *Williams,* 130 Mo. 530, 32 S. W. Rep. 1016, that the ballots are the best and primary evidence provided they have been kept by the proper custodian in the manner required by law and have not been tampered with. When the boxes are produced and they and the ballots contained in them are fair on their face they are prima facie admissible and the burden of showing that they are not shifts to the other party. *Tebbe* v. *Smith,* 108 Cal. 101, 41 Pac. Rep. 454; *Dooley* v. *Van Hohenstein,* 170 Ill. 630, 49 N. E. Rep. 193; *Hartman* v. *Young,* 20 Pac. Rep. 17; *Apple* v. *Barcroft,* 158 Ill. 649; *Baris* v. *State,* 75 Tex. 420, 12 S. W. Rep. 957; *Hudson* v. *Solomon,* 19 Kan. 177; *Hunnicutt* v. *State,* 75 Tex. 233, 12 S. W. Rep. 106. Statutory provisions to be obeyed by the election officers are quite uniformly held directory, those to be obeyed by the voter mandatory. *Tebbe* v. *Smith,* 41 Pac. Rep. 454; *O'Gorman* v. *Richter,* 31 Minn. 25, 16 N. W. Rep. 416; *Peo.* v. *Livingston,* 79 N. Y. 279; *Horning* v. *Burgess,* 77 N. W. Rep. 446; McCrary on Elections, § 724. The ballot marked with a cross in the square at the head of the independent and democrat column and also a cross opposite respondent's name in the republican column should be counted for appellant. *Valier* v. *Brakke,* 64 N. W. Rep. 180; *McKittrich* v. *Pardee,* 65 N. W. Rep. 23; *Church* v. *Walker,* 10 S. D. 450, 72 N. W. Rep. 101. Else one mark neutralizes the other. *State* v. *Fransham,* 48 Pac. Rep. 1; In re Assessor, 40 Atl. Rep. 822. The ballot with a diagonal mark in the square at the head of the independent and democrat column

should be counted for appellant. The statute does not require a cross mark. Laws 1897, Ch. 76; *Tebbe* v. *Smith,* 41 Pac. Rep. 456. Our constitution (Sec. 129) provides for a secret ballot. So does the statute. Sec. 559 Rev. Codes; *Ex parte Arnold,* 128 Mo. 256, 30 S. W. Rep. 768. Certain of the ballots crossed opposite every name in the republican column are illegal as bearing distinguishing marks. Distinguishing or identifying marks are either marks of a kind not authorized by law or marks authorized by law which are put in unauthorized places. *Curran* v. *Clayton,* 86 Me. 42, 29 Atl. Rep. 930; *Parvin* v. *Wiemberg,* 30 N. E. Rep. 790, 130 Ind. 561; McCrary on Elect. § 724; § 559 Rev. Codes; *Attorney General* v. *McQude,* 94 Mich. 439; *Whittam* v. *Zahorik,* 59 N. W. Rep. 57; *Dennis* v. *Caughlin,* 41 Pac. Rep. 768; In re Ballot Marks, 27 Atl. Rep. 608; *Sego* v. *Stoddard,* 36 N. E. Rep. 204; *Zeis* v. *Passwater,* 41 N. E. Rep. 796; *Bechtel* v. *Albin,* 33 N. E. Rep. 967; *Lauer* v. *Estes,* 53 Pac. Rep. 262; *Oglesby* v. *Sigman,* 58 Miss. 502. Exhibits 3 and 8 have crossmarks outside of the squares. This kind of marking has been repeatedly condemned. *Vallier* v. *Brakke,* 64 N. W. Rep. 180; *Apple* v. *Barcroft,* 158 Ill. 649; *Curran* v. *Clayton,* 29 Atl. Rep. 930; *Taylor* v. *Blenkley,* 39 Pac. Rep. 1045; *Attorney General* v. *Gaser,* 102 Mich. 405; *Bechtel* v. *Albin,* 33 N. E. Rep. 967; In re Flynn, 37 Atl. Rep. 523; *Dennis* v. *Caughlin,* 41 Pac. Rep. 768; *Parvin* v. *Weimberg,* 30 N. E. Rep. 790. Exhibits 11 and 12 each were marked opposite the respondent's name, an attempt was clearly made to obliterate it by making other marks over the first, and on each ballot a well defined cross appears in the square opposite appellant's name. These circumstances indicate an honest purpose to vote for appellant and that the first mark was a mistake which the voter endeavored honestly but ignorantly to correct. *State* v. *Walsh,* 17 L. R. A. 364, 25 Atl. Rep. 1; *Dennis* v. *Caughlin,* 41 Pac. Rep. 768; *State* v. *Fawcett,* 49 Pac. Rep. 346. Exhibit "E" should have been counted for appellant. The fact that appellant's name was already printed upon the ballot did not destroy the effect of writing his name thereon. *Sannor* v. *Patton,* 155 Ill. 553. Nor does the fact that the name of E. A. Howser was written on Exhibit "E" instead of Edgar A. Howser deprive appellant of the right to have this ballot counted as a vote for him. *Newton* v. *Newell,* 26 Minn. 529; *State* v. *Foster,* 38 Ohio St. 599; Opinion of Justices, 64 Me. 596; *Attorney General* v. *Coldburn,* 62 N. H. 70; *Clark* v. *Board,* 126 Mass. 282; *Peo.* v. *Smith,* 45 N. Y. 772. The notice of contest was sufficient to allow the admission of the tallies in evidence. *Bragunier* v. *Penn.* 29 Atl. Rep. 12; *Hadley* v. *Gutridge,* 58 Ind. 302. The tallies should control the figures. *State* v. *McFadden,* 65 N. W. Rep. 800.

*F. A. Kelly,* and *Bangs & Guthrie,* for respondent.

Defendant's objection at the opening of the trial that section 566, Rev. Codes, had not been complied with and jurisdiction was lost,

should have been sustained. *Brown* v. *Hixon,* 45 Mo. 340; *Seeley* v. *Killoran,* 53 Minn. 240; *Costello* v. *St. Louis,* 28 Mo. 278; *Wilson* v. *Lucas,* 43 Mo. 290. The statute requires the inspector to retain the ballot box locked with the ballots in it for sixty days next after election. § 526, Rev. Codes. After the expiration of the statutory time for holding the ballots they ceased to have a legal existence. *State* v. *Bates,* 36 N. W. Rep. 17. The ballots for the four precincts under investigation by this contest were not in proper custody of law, had not been properly kept. The boxes into which they were placed were not sealed as required by law. In two of the precincts the ballots had not been kept by the officer required by law to keep them. They were offered in evidence ten days after they had ceased to have any legal existence. The burden of showing that the ballots offered in evidence were the identical ballots cast was upon contestant. Their integrity was sufficiently impeached to shift the burden of proof. *Hudson* v. *Solomon,* 19 Kan. 177; McCrary on Elections, § 478; *Dorey* v. *Linn,* 31 Kan. 758; *Murphy* v. *Battle,* 155 Ill. 182; *Albert* v. *Twohig,* 35 Neb. 563. Where the statute provides a mode of preserving the identical ballots for the purpose of being used as evidence the statute must be strictly followed. If it appears that they have been handled by unauthorized persons or that they have been left in an exposed and improper place they cannot be offered to overcome the official count. McCrary on Elections, § 471; *Butler* v. *Lehman* 1 Barb. 353; *Powell* v. *Holman,* 6 S. W. Rep. 505; *Hughes* v. *Holman,* 23 Ore. 48; *Tebbe* v. *Smith,* 108 Cal. 101; *Hartman* v. *Young,* 17 Ore. 150; *Peo.* v. *Burden,* 45 Cal. 241. The party offering the ballots to impeach the official returns must show affirmatively that they are the identical ballots cast. *Beall* v. *Albert,* 159 Ill. 126; *Fenton* v. *Scott,* 17 Ore. 189; *Newton* v. *Newell,* 26 Minn. 529; *Martin* v. *Miles,* 58 N. W. Rep. 732. The proviso in section 524, Rev. Codes, ameliorates the otherwise harsh rule of construction. The statute is directory as to the method of the voters designating his choice. *Dickerman* v. *Gelsthorpe,* 47 Pac. Rep. 999; *State* v. *Russell,* 51 N. W. Rep. 465; *Spurgin* v. *Thompson,* 55 N. W. Rep. 297; *Peo.* v. *McManus,* 34 Barb. 620; *Houston* v. *Steele,* 34 S. W. Rep. 6. The mark prohibited by law is such an one as shows an intention to distinguish the ballot from others of its class. *State* v. *Russell,* 51 N. W. Rep. 465; *Tebbe* v. *Smith,* 41 Pac. Rep. 454; *Houston* v. *Steele,* 34 N. W. Rep. 6; 33 Am. St. Rep. 625. Exhibit "E" should not be counted for either party because there is no cross or mark after the name of either candidate. Laws 1897, page 117; *Martin* v. *Miles,* 65 N. W. Rep. 889. Also for the reason that there is no evidence showing that Edgar A. Howser and E. A. Howser is one and the same person. *Vickery* v. *Burton,* 6 N. D. 245, 69 N. W. Rep. 193; *State* v. *The Judge,* 13 Ala. 805; Opinion of Justices, 64 Me. 596; Redman's Appeal, 174 Pa. St. 59; McCrary on Elections, 528-530. Exhibit "2" should

be counted for respondent, it is not a void ballot. *McMahon* v. *Polk,* 10 S. D. 296.

YOUNG, J. This is an election contest, prosecuted under article 12 of chapter 8 of the Political Code, and involves the office of clerk of court of Nelson county. The parties to the contest were rival candidates for that office at the November, 1898, elections. The official ballot of Nelson county consisted of two columns, the first containing the names of the republican candidates, and the second the names of the candidates designated thereon as independent-democrat; each column being under its party name. The contestant was the candidate of the party designated as independent-democrat, and his name was printed in the second column, belonging to that party. The contestee was the republican candidate, and his name was printed in the first, or republican, column. The official canvass of the precinct returns gave Edgar A. Howser, the contestant, 708 votes, and J. A. Pepper, the contestee, 711 votes. The latter was accordingly declared elected, and a certificate of election issued to him. Within the time limited by section 563, Rev. Codes, the contestant challenged the result of the canvass and the right of contestee to the office by serving notice of contest, wherein he set out at length the grounds of his contest, and alleged that he (Howser) had in fact received 712 votes, and that contestee, Pepper, had received but 701 votes, and in due time contestee answered such notice. The contest was noticed for trial by contestant for a regular term of the District Court of Nelson county held on January 16, 1899, as an adjourned session of the regular November, 1898, term, and was heard by the Court without a jury at such term on January 19, 1899. Prior to the introduction of the testimony, the contestee objected to the jurisdiction of the Court to try the contest at that term upon the ground that such contest had not been brought to trial within 20 days after the answer was served, and that no term of court had been appointed to be held within such 20 days, and that contestee had not been served with notice of hearing. This objection was overruled by the Court, and, we think, properly so. The objection is based upon section 566, Rev. Codes, relating to the trial of election contests. The part of said section which is pertinent is as follows: "The judge of the District Court, in case no term of such court occurs in such county within twenty days after the service of the answer in such contest, may appoint a term of such court therein; but if a term of court occurs in such county before that time, then the contest shall be tried at such term unless otherwise ordered by the Court. The District Court or the judge thereof may, upon ten days' notice by either party, try such contest at chambers at any place fixed by the Court." We find no reason for holding that this section was intended to confine the jurisdiction of the District Court to try election contests to a limited period. Such a conclusion cannot be sustained by its language nor by fair inference. On the other hand, the purpose of the section is clearly

to extend to the parties to election contests speedier methods of bringing the contest to trial than those afforded by the ordinary procedure in civil cases; and it is also apparent from an examination of the section that the time of trial is as much under the control of one party as the other. In the present contest the District Court acquired jurisdiction to try the issues by the service of the notice of contest within the statutory period. That jurisdiction continues until the contest is disposed of by trial or dismissed. The record shows that contestant gave the requisite notice of trial prior to the hearing. It was therefore properly before the District Court for trial. That court made a general finding that J. A. Pepper, who holds the office under a certificate of election issued in pursuance of the official canvass, received a majority of the votes cast at such election, and entered judgment confirming him in the right to hold the office. Contestant, Howser, appeals.

Contestant challenges the correctness of the official canvass of but four precincts, namely, the precincts of Center, Lee, Illinois, and Ora, and contends that a correct count of the ballots cast in these precincts, will, when added to the official canvass of the votes of the remaining precincts in the county, give him a majority of all the votes cast. The poll books and ballot boxes from these precincts were offered in evidence by contestant, and the ballots were counted in open court, and a stipulation of counsel was entered of record as to each precinct, showing the number of undisputed votes in each for Howser and for Pepper separately, as shown by the ballots in the boxes. There were, altogether, 13 ballots which were not included in the stipulation. These were submitted to the trial court as the only ballots in dispute, and they are here as the only ballots for us to consider. Our discussion is therefore limited to the four precincts named and the 13 disputed ballots, which are known in the record as Exhibits 1 to 12, inclusive, and Exhibit E. Contestee contended below, and strenuously instists here, that none of the ballots offered are entitled to credit, and are not competent evidence to impeach the official canvass, basing his objections upon the manner in which the ballot boxes were kept. It may be stated, as a general principle, that the original ballots cast are the best evidence from which to determine the result of an election. The difficulty does not consist in the rule, but is found in the preliminary question as to whether the ballots offered to impeach the returns are the original ballots, and in the same condition as when cast by the electors. The effect of the original ballots as evidence, and the degree of care required to continue them as controlling evidence, is stated by Judge Brewer in *Hudson* v. *Solomon*, 19 Kan. 177, in the following language: "First, As between the ballots cast at an election and a canvass of these ballots by the election officers, the former are primary,—the controlling evidence. Second. In order to continue the ballots controlling as evidence, it must appear that they have been preserved in the manner and

by the officers prescribed by the statute, and that, while in such custody, they have not been so exposed to the reach of unauthorized persons as to afford a reasonable probability of their having been changed or tampered with." There are cases holding that the mere opportunity to tamper with the ballots entirely discredits them. See McCrary, Elect. (4th Ed.) § 471, and cases cited. We think the prevailing and better view is that expressed by Judge Brewer. This is supported by *Sone* v. *Williams* (Mo. Sup.) 32 S. W. Rep. 1016. See, also, *Fenton* v. *Scott,* 17 Ore. 189, 20 Pac. Rep. 95. The duties imposed upon officers to whom the ballot boxes are intrusted is found in section 526, Rev. Codes, which is in part as follows: "The inspector of elections shall lock the ballot box after the ballots have been replaced therein, in the presence of the judges, and shall send the key properly labeled with the name and number, of the polling precinct at the same time as he returns the poll books and statement to the county auditor, but shall retain in safe custody the ballot box used at the election, sealed, with all the ballots cast at the same replaced therein, during sixty days next after election. And it shall be his duty to cause the said box to be safely delivered to the county auditor upon the written request of the board of canvassers at any time during said sixty days. In organized townships within thirty days after said date, or in cities or villages, the inspector of elections shall deliver, if he is not himself the officer in question, the boxes to the chairman of the board of supervisors of the civil township, or mayor of the city or president of the village, in which the election precinct is situated, as the case may be; and this officer shall keep in safe custody such boxes until the next election or hand them over to his successor in office to be by him safely kept until such time." Upon the question whether the provisions of a statute providing for the preservation of ballots is directory or mandatory, McCrary, Elect. (4th Ed.) § 473 gives the rule, as we think, correctly, as follows: "The better opinion seems to be that, if the deviation from the statutory requirements relating to the manner of preserving the ballots has been such as necessarily to expose them to the public or unauthorized persons, the Court should exclude them; but, if the deviations have been slight, or of such a character as not necessarily to render doubtful the identity of the ballots, the question of the identity may well go to the jury to be determined upon all the evidence." *Mallett* v. *Plumb,* 60 Conn. 352, 22 Atl. Rep. 772.

The first question, then, is, are the ballots from these four precincts controlling evidence under the foregoing principles? As to the precincts of Center and Lee, we are of the opinion that they are not, and to this extent agree with the trial court in refusing to consider them; and in so holding we are largely controlled by the fact that there is no pretense that the ballot boxes for these precincts were in the custody of the inspectors who were charged

with the duty of keeping them safely, at any time after the night of the election. The inspector for Center precinct took the ballot box to his father's house on the night of the election, and left it in a room upstairs, which was occupied by his two brothers, aged 18 and 24, as a bedroom, which was generally accessible to the family, which was ten in number. The inspector, who lived with his father, went to Minnesota in December, where he remained, and did not testify at the trial. The box was produced by his father. The ballot box for Lee precinct was taken by the inspector to the house of one of the judges of election upon the night of the election, where the inspector got it the day before the trial, and produced it in court, not having it in his custody in the meantime, or having even seen it. In both precincts there was an entire absence of official custody of the ballot boxes. This fact, taken in connection with the further fact that the boxes were within the reach of unauthorized persons for a period of 70 days prior to their production in court, in our judgment destroyed their probative weight as the best evidence, and they cannot, therefore, be allowed to impeach the canvass of the votes by the precinct officers, which was made by them as the representatives of the two political parties, in public, and under the observation of the friends of the rival candidates. The official canvass, as declared by the canvassing board, will stand therefore as to the precincts of Center and Lee. Two of the disputed ballots—Exhibits 10 and 11—come from these precincts. By the rejection of the ballots as a whole, these two exhibits are removed from our further consideration. The conditions as to the custody of the ballot boxes are different in the two remaining precincts. In both the ballots were returned to the boxes immediately after the votes were canvassed. The boxes were locked, and the keys sent to the county auditor. The inspectors took charge of the ballot boxes, and continued in charge of them up to the time when they produced them in court, and unlocked them with the keys produced by the county auditor. The evidence is silent as to where the inspector of Illinois precinct kept the ballot box, but it shows that he kept possession of it, and that it was locked with a padlock, and was not opened. The degree of care shown to have been exercised in the preservation of this ballot box, taken in connection with the evidence of the inspector and that furnished by the ballots themselves, satisfies us with the integrity of the ballots of this precinct. We must therefore determine how the disputed ballots from the precinct shall be counted. They are Exhibits 12 and E. The official canvass of the precinct gave Howser 34 and Pepper 6. The count of the ballots for clerk of court made in court by stipulation gave Howser 33 and Pepper 6 undisputed votes with Exhibit E and Exhibit 12, in dispute, and one blank not to be counted for either. It is clear, then, that one of these two exhibits was counted for Howser at the precinct canvass to make up the 34 votes counted for him, and it is also clear that the vote counted was Exhibit 12,

for, as appears later, Exhibit E was not counted at all. The question now is, was it properly counted for him? We have concluded that it was. This ballot shows what is known as a "mixed" ticket, in which the voter has made a cross in the squares opposite the name of the candidate for whom he desired to vote. There is a cross in the squares after the names of both candidates for clerk of court, and that after Howser's name is very distinct, but the one after Pepper's name bears unmistakable evidence of an attempted erasure. The precinct canvassers determined from this ballot that the voter intended to vote for Howser, and so counted it. Our examination of the ballot as it now appears does not lead to a different conclusion. It was properly counted for Howser. The only ballot, then, which can affect the official canvass of this precinct is Exhibit E, which we will now consider. Its identity is established by the evidence of the inspector, also by the return to the auditor, as a vote cast, but not counted, because not marked with a cross. On this ballot the name of J. A. Pepper is erased, and the name of E. A. Howser is written underneath upon the proper line. No cross or mark of any kind appears in the square opposite Howser's name or elsewhere. The precinct board refused to count it, because it was not marked with a cross, and so certified in their returns to the auditor, and returned the ballot with the returns properly sealed. This should have been counted for Howser. Section 491, as amended by chapter 76 of the Session Laws of 1897, does not require a cross or mark opposite names which have been written or pasted upon the official ballot opposite the office to be voted for, to entitle them to be counted. This vote is to be added to Howser's official vote in this precinct. The ballot box of Ora precinct, as has been stated, was at all times in the custody of the inspector, but it was not kept with the same degree of care as that of Illinois precinct. The box was kept by the inspector in his house, in an addition thereto which was used generally for storing various articles. This room had outside windows, but no outside door, the entrance was from the main part of the house, through a door which was not kept locked. The room was generally accessible to the members of his family, which was eight in number, and to his hired men, of whom he had several at different times. Under the strict rule that a mere opportunity for tampering is sufficient to discredit ballots, and destroy their character as the best evidence, we would be inclined to hold that the ballots of this precinct, under the above facts, would be without probative weight. But under the rule that the exposure must have been such as to create a reasonable probability that they have been tampered with,—which we consider the better rule,—we think these ballots must be considered. There is no evidence which even tends to show any tampering with the ballot box or the ballots. The contest as to every vote depends wholly upon the interpretation to be given to the markings on the ballots. In this precinct the inspector kept the box in as secure a place as he could. It

was possible for tamperers to get to it, but we cannot . say that there is a reasonable probability that they did, and that the ballots have been changed. We hold, then, that these ballots are admissible, and upon the question whether they are the original ballots we have no difficulty in reaching a conclusion from an examination of the ballots themselves, and a comparison with the official returns, that they are the identical ballots cast, and, with two exceptions, their identity is proved by the official stamp of the precinct and the initials of the inspector. The exceptions create no suspicions, for one is marked Howser and the other Pepper. Further proof is found in the official canvass. The canvassing board found that 127 votes had been cast for the office of clerk, 25 of which they gave to Howser and 102 to Pepper, while the count of the ballots in court showed the same number marked for this office. Of these the stipulation concedes 23 belong to Howser and 95 belong to Pepper. The other nine are to be determined entirely from their markings. "When the statute provides that the ballots shall be kept in a certain way, and they are in the hands of the proper officer, it is presumed that he has done his duty; and the burden of proof· is upon those assailing them to show that they might have been tampered with. On the other hand, when it is made to appear that the statutory provisions have not been complied with, this fact alone does not render the ballots inadmissible, but merely throws upon the person who asks the recount the burden of proof to show that they have not been tampered with; but this is a question of fact to be determined by jury or the Court trying the issue. 10 Am. & Eng. Enc. L. (2d Ed.) 831, and cases cited. In this precinct, and also Illinois precinct, the boxes were not technically sealed, but were merely locked. This, with the manner the boxes were kept, may be such a non-compliance with the statute as to cast the burden upon contestant to show that the ballots have not been tampered with. Conceding this, we think the obligation is met, and the evidence satisfies us that the ballots have not been changed. The disputed ballots are Exhibits 1 to 9, inclusive. The marking of ballots used at this election was governed by section 491 of the Revised Codes, as amended in 1897. This section provides· the means by which the voter may declare his choice: First, he may, by his mark in the square at the head of the ticket under the party name, declare that he votes for all names printed in that column except such as are erased or pasted or written over; second, he may designate his choice of candidates for an office by placing a "cross or other mark" in the square opposite the name of the candidate for whom he desires to vote; third, he may write or paste a name on the ballot opposite the office to be voted for, and such name shall be counted, whether marked or not. Section 524, Rev. Codes, relating to the canvass of ballots, is as follows: "In the canvass of the votes, any ballot which is not endorsed as provided in this chapter by the official stamp and initials shall be void and shall not be counted, and any ballots or parts of

a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted; provided that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention it shall be the duty of the judges of election to count such part." Two of the ballots here in dispute did not have the official stamp and initials, and should not have been counted by the precinct canvassers. This was conceded by counsel at the trial. The provision requiring the ballot to have the precinct stamp and the initials of the inspector was upheld by us at the present term as being both mandatory and constitutional, in *Miller* v. *Schallern*, 8 N. D. 395, 79 N. W. Rep. 865. These ballots are known as Nos. 6 and 7. One was marked for Howser, and the other for Pepper. Their rejection is a loss of one each.

On ballots 3 and 8 the voters have placed their cross entirely out of the squares provided as a place in which to indicate their choice. The only mark of any kind upon ballot No. 3 is a cross at the head of the republican column, about one-half an inch to the left of the square for voting the party ticket, and upon ballot 8 the elector placed a cross opposite the names of 14 different candidates in the independent-democrat column, but all to the right and outside of the squares. He then crossed over to the republican column, and made crosses opposite the names of 17 candidates of that party (one of which was that of Pepper) for other offices, but in every instance the cross was to the left and out side of the squares. The same principle will apply to both ballots. If canvassers may gather the intent of the voter from means other than the marking authorized by the statute, then the precinct officers were right in counting these two votes for Pepper. The authorities are to some extent in conflict upon this, but the rule which appeals to us as the safest guide is that requiring the voter to express his choice in the manner provided by the statute, and requiring canvassers and courts to disregard a ballot wherein the intention of the voter is not expressed by such means. This is the rule adhered to in South Dakota. That court, in *Vallier* v. *Brakke,* 64 N. W. Rep. 180, in passing upon a similar ballot, said : "There is much discussion on the argument and in the briefs of counsel as to the duty of judges of election and courts to carry out the intention of the voter. This is true to a certain extent; but, as the legislature has required the elector to express his choice by cerain well defined markings upon his ballot, his intention must be determined by these markings, and not by the uncertain and undefined ideas of the judges of election or by the courts as to his intention. The legislature has clearly and precisely defined the manner in which the elector may designate the candidate for whom he desires to vote, and has prescribed definite and fixed rules to govern the voter in designating such candidates. As before stated, the system is simple, and there is no difficulty in the elector's complying with the rules. In our view, it is neither the duty of judges of election nor the courts to fritter away the benefits of the system

by strained efforts to get at the intention of the voter in any manner other than by following the rules prescribed by the legislature." See, also, *Apple* v. *Barcroft,* 158 Ill. 649, 41 N. E. Rep. 1116; *McKittrick* v. *Pardee* (S. D.) 65 N. W. Rep. 23. The case of *Houston* v. *Steele* (Ky.) 34 S. W. 6, holds that a cross just outside the squares is sufficient, but the holding is not supported by either reason or authority. It follows from what we have said that ballots 3 and 8 cannot be counted.

On ballot No. 1 the voter made a cross in the square at the top of the independent-democrat column. He also made a cross in the squares opposite the names of 28 out of the 33 names of candidates in that column, but made no mark in the square opposite Howser's name. But he did make a cross in the square opposite Pepper's name in the republican column, and also made crosses in the squares opposite the names of two other republican candidates. In these markings the voter has used the method authorized by statute for declaring his choice, and we have no difficulty in determining that the intention of the voter was to vote for Pepper, and not for Howser. It is true that, if the names of no individual candidates were marked, the cross at the head of the party ticket would sufficiently indicate the general intention of the voter to vote for every candidate in that column whose name was not erased, pasted, or written over. But by marking opposite the names of particular candidates the voter unmistakably evinced a specific intention to vote for those particular candidates, and thus abandoned or nullified the effect of the mark at the head of the party column so far as the markings for individual candidates was inconsistent with the intention evinced by the mark at the head of the ticket This vote must be counted for Pepper. Our conclusion is supported by *Young* v. *Simpson* (Colo. Sup.) 42 Pac. Rep. 666, decided under a similar statute. See, also, *Whittam* v. *Zahorik* (Iowa) 59 N. W. Rep. 57. Other courts hold that one mark neutralizes the other, and should not be counted at all. *State* v. *Fransham* (Mont.) 48 Pac. Rep. 1; *Dickerman* v. *Gelsthorpe* (Mont.) 47 Pac. Rep. 999. Contestant claims this vote should be counted for him, and cites the decisions of South Dakota which hold, under a similar state of facts, that such a vote should be counted for every name on the party ticket which has not been erased, regardless of individual markings on other tickets; citing *Vallier* v. *Brakke* (S. D.) 64 N. W. Rep. 180; *McKittrick* v. *Pardee* (S. D.) 65 N. W. Rep. 23; *Church* v. *Walker* (S. D.) 72 N. W. Rep. 101. We do not consider these cases in point, or necessarily adverse to the views we have expressed. They are decided under a statute unlike that in this state, in this: that their statute not only declares the legal effect of the mark at the head of the party ticket, but further declares that it shall be counted for every candidate in the party column whose name is not erased. Their statute also provides that, "when a cross is placed to the left of any name on any other ticket the vote shall be counted for such other person; provided, the name of the candidate for the same

office on the ticket marked at the top by the voter is erased." The decisions relied upon are thus based upon a statute which declares the effect of such conflicting marks, and also how they shall be counted, removing from canvassers and courts the duty of gathering the intention of the voter from his markings. We have no statute which compels us to count a vote for a candidate for whom it was plainly not intended, but, on the other hand, effect is required to be given to the voter's choice when evinced in the manner provided by law.

Ballots 2, 5, and 9 are properly marked for Pepper. Contestant insists, however, that each of these ballots contain identification marks, and that such votes are, therefore, void, and should be thrown out. The marks complained of are crosses appearing upon the ballots which were not necessary to indicate the voter's choice. On Exhibit 2 there is a cross to the left of the square opposite the name of Fancher, and also a cross in the square. On Exhibit 5 there is a cross in the square at the head of the republican column, and a cross in all of the squares opposite the names of all the candidates in that column, and also in all the squares opposite all of the blank spaces for writing in names. Exhibit 9 is marked the same as Exhibit 5, except that it has no cross in the square at the head of the ticket. The objection to the counting of these votes is based upon section 559, Rev. Codes, which, for the purpose of maintaining the purity and secrecy of the ballot, prohibits the doing of numerous acts, among which is the use of distinguishing marks by the elector; the acts so prohibited being made punishable as a misdemeanor. The provision relating to distinguishing marks is as follows: "No elector shall place any mark upon his ballot by which it may afterwards be indentified as the one voted by him." The legislature has made such act unlawful, and to it has affixed a criminal penalty, but there is no provision of the statute which declares that a ballot so marked shall be void, and shall not be counted. On the contrary, section 524, before quoted, specifically declared what votes are void, and are not to be counted, namely, those which are not indorsed with the official stamp and initials, and those ballots or parts of ballots from which it is impossible to determine the elector's choice. Counsel for contestant cites *Sego* v. *Stoddard* (Ind. Sup.) 36 N. E. Rep. 204; *Zeis* v. *Passwater* (Ind. Sup.) 41 N. E. 796; *Bechtel* v. *Albin* (Ind. Sup.) 33 N. E. Rep. 967; *Dennis* v. *Caughlin* (Nev.) 41 Pac. Rep. 768; *Lauer* v. *Estes* (Cal.) 53 Pac. Rep. 262. All of these decisions are based upon statutes which not only prohibit the use of identifying marks, but further provide that ballots so marked shall not be counted, and are not, therefore, in point. *Whittam* v. *Zahorik* (Iowa) 59 N. W. Rep. 57, is under a statute very similar to our own, and upholds the rule that, "where the unauthorized marks are made deliberately, and may be used as a means of identifying the ballot, it should be rejected," but further holds that "it is not practicable

to adopt a rule in regard to identifying marks which would be applicable to all cases. It will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skillful in marking. Some are not accustomed to using pen or pencil, and may place some slight mark on the ballot inadvertently, or a cross may be clumsily retraced. It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identification, the ballots should be counted." The rule which appeals to us as the one best calculated to secure secrecy of the ballot without at the same time arbitrarily disfranchising voters whose ballots have superfluous marks placed there by themselves, innocently, or possibly corruptly placed upon the ballot by election officers for the purpose of destroying the vote, is that given by the Supreme Court of South Dakota in *Church* v. *Walker*, 74 N. W. Rep. 198. "The legislature never intended to disfranchise a legal voter, who, in substantially complying with the mandatory requirements of the law, has, without an evil purpose, but by accident or inadvertence, made a blot or mark upon his ballot, which in no manner tends to distinguish the same, or divulge the secret in his breast. This is undoubtedly the better rule, and one more in harmony with the spirit and intent of our ballot system. Unless, therefore, the ballot has been marked intentionally, and so marked as to enable third persons to determine, from an inspection of it, without other aid, that the same was deposited by a particular person, the judges of election should presume that the marking was inadverently done, and count the ballot. The object to be obtained by the Australian ballot law is to secure a secret ballot; that is, secret as to the judges of election and third persons. It would be difficult to lay down any rule which would prevent the voter himself from identifying his own ballot, and any attempt to do so would be futile." To the same effect is *State* v. *Russell* (Neb.) 51 N. W. Rep. 465. The ballots which are in question here do not present marks which themselves show that they were intended as distinguishing marks, and there is no evidence aliunde that they were in fact marked for 'the purpose of identification. It is therefore to be presumed that the marks were innocently made, and they were therefore properly counted as votes for Pepper.  .

Ballot Exhibit 4 has a single straight mark in the square at the top of the independent-democrat column, and no other mark upon it. This is objected to by contestee, because it is not marked with a cross. The ballot, as marked, complies with the statute. Section 491, Rev. Codes, as amended, only requires a mark in the square at the top of the party ticket, or "a cross or mark" in the squares opposite the names of candidates, to indicate the voter's choice. This ballot must be counted for Howser.

It is stipulated in the record that Pepper had 95 and Howser 23 undisputed votes in this precinct. Of the disputed ballots we give to Howser 1,—Exhibit 4. To Pepper we give 3 of the disputed ballots,—Exhibits 2, 5, and 9. The official canvass of the precinct

gave Howser 25, Pepper 102. The correct count of the precinct is 24 for Howser and 99 for Pepper, a loss of 1 for the former and 3 for the latter from the official count.

Recapitulating we find that Howser received 1 more vote in Illinois precinct than was given to him by the canvassers, and 1 less in Ora precinct. His correct vote, then, stands as canvassed. We find that Pepper received 3 less votes than counted for him by the canvassing board. The official canvass was 708 for Howser and 711 for Pepper. We find, then, that each candidate received 708 votes, and that by reason of the tie vote neither candidate was elected to the office of clerk of court, and neither is entitled to a certificate of election until such tie shall be removed upon the notice and in the manner provided by section 528 for determining the right to office between candidates who have an equal number of votes. The judgment of this Court is that J. A. Pepper received 708 votes for the office of clerk of court of Nelson county at the November, 1898, election; that E. A. Howser received the same number of votes for the same office; that such election did not result in the choice of either candidate for such office; and that the certificate of election issued by the board of canvassers to J. A. Pepper, reciting his election to such office, is void, and of no effect. The judgment of the District Court is reversed, and that court is directed to enter judgment in accordance herewith. All concur.