ALBERT WEBER, Appellant, v. D. J. O'CONNELL, Respondent.

(215 N. W. 539.)

**Elections — absent voters ballots — must be stamped and initialed.**

> Section 1006, Comp. Laws 1913, providing "In the canvass of the votes any ballot which is not indorsed as provided in this chapter by the official stamp and initials shall be void and shall not be counted," applies to absent voters ballots deposited in a ballot box pursuant to § 1001, Comp. Laws 1913, and where such absent voters ballots are not so indorsed they are void and cannot be counted.

Opinion filed August 18, 1927. Rehearing denied October 18, 1927.

Elections, 20 C. J. § 180 p. 151 n. 32; § 186 p. 156 n. 94; § 268 p. 209 n. 55.

Appeal from the District Court of McHenry County, *Kneeshaw,* J.

Election contest. From a judgment for defendant, plaintiff appeals.

Reversed and remanded with directions.

*McGee & Goss,* for appellant.

"All statutes in pari materia are to be read and construed together as if they form a part of the same statute and were enacted at the same time." Hammer v. United States, 123 C. C. A. 194, 204 Fed. 898, 241 U. S. 379, 60 L. ed. 1055.

"The vital question in interpreting a statute is the legislative intent." Granger v. Lorenzen, 28 S. D. 295, 133 N. W. 259.

"It will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skilful in marking." Howser v. Pepper, 8 N. D. 497, 79 N. W. 1018.

*D. J. O'Connell,* for respondent.

It is only those provisions of the election laws as are made essential prerequisites to the validity of an election that are mandatory, all others are merely directory. Russell v. McDonald, 83 Cal. 70.

Mere irregularities of election officers which do not affect a voter's rights, nor the purity of the election, and not made in reference to the matters made mandatory by law, do not invalidate an election. Fullwood v. State, 67 Miss. 554; State ex rel. Crawford v. Norris (Neb.) 55 N. W. 1086.

In the exercise of the right of suffrage the statutes are to be construed liberally in favor of the voter, not in favor of technicalities. 9 R. C. L. 1093.

NUESSLE, J. This is an election contest. Plaintiff and defendant were opposing candidates for the office of state's attorney in McHenry county at the general election held in 1926. On the face of the returns as made by the county canvassing board, plaintiff received 2142 votes and the defendant 2152 votes and the defendant was declared elected. Thereupon the plaintiff instituted this action.

When the case came to trial in the district court it was stipulated that all questions or grounds of contest should be waived except such as might be found on recount of the ballots cast. Thereupon the trial court proceeded to count such ballots and found that 4300 ballots were

cast for the office of state's attorney; that of these ballots 4248 were legal and proper and concerning which there was no question, and 52 were disputed or contested ballots which were challenged by the respective parties. Of the unchallenged ballots, plaintiff received 2123 and the defendant 2125. Of the disputed or contested ballots, 31 were regular ballots and 21 absent voters ballots. The trial court found that 28 of the 52 contested ballots were not valid and these were not counted. The court held that the remaining 24 contested ballots were valid and counted the same, finding that 17 thereof were cast for the defendant and 7 for the plaintiff, thus finding that the total vote received by the plaintiff was 2130 and by the defendant 2142. Judgment was entered accordingly. The appeal is from such judgment.

In this court both parties concede that there was no error on the part of the trial court in its action with respect to 26 of the ballots held invalid and rejected, and our inquiry is thus limited to the remaining 26 ballots. Of these 21 are absent voters ballots. The remaining 5, designated in the record as Exhibits 5, 22, 30, 49 and 50, are regular ballots.

The 21 absent voters ballots here in question are not stamped and initialed as required by §§ 985 and 1001, Comp. Laws 1913. The question as to these ballots is as to whether they are thereby rendered void and shall not be counted. Section 985 reads as follows:

"The inspector or one of the judges of election shall deliver ballots to the qualified electors. Before delivering any ballot to an elector the inspector or judge shall print on the back and near the top of the ballot with a stamp provided for that purpose, the designation 'official ballot' and the other words provided for in section 965 and also write his initials thereon. Each qualified elector shall be entitled to receive from the judges one ballot."

Article 16 of chapter 11 of the Political Code, Comp. Laws 1913, §§ 992 to 1004, inclusive, provides that electors absent from the counties in which they are electors on election day may vote, and prescribes the manner in which such an elector may procure and vote his ballot. After prescribing the manner in which he must make application for the ballot, receive it, vote the same, return it to the county auditor, and the manner in which the county auditor must in turn deliver it over

to the officers of the election precinct in which the vote should properly be cast, the statute, § 1001, provides:

"At any time between the opening and closing of the polls on such election day, the inspector or judges of election of such precinct shall first open the outer envelope only, and compare the signature of such voter to such application with the signature to such affidavit. In case the judges find the affidavit is sufficient and that the signatures correspond, and that the applicant is then a duly qualified elector of such precinct and has not voted at such election, they shall open the absent voter envelope, in such manner as not to destroy the affidavit thereon, and take out the ballot or ballots therein contained, and without unfolding the same, or permitting the same to be opened or examined, *and having indorsed the same in like manner that other ballots are indorsed,* deposit the same in the proper ballot box or boxes, showing by the records of such election such elector to have voted. . . ."

Section 1006, Comp. Laws 1913, provides:

"In the canvass of the votes, any ballot which is not indorsed as provided in this chapter by the official stamp and initials shall be void and shall not be counted, and any ballot or parts of a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted; provided, that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention it shall be the duty of the judges of election to count such part."

Article 16 above referred to conferring the right to vote on absent voters was enacted as chapter 155, Sess. Laws 1913, and was an innovation in the election laws. Sections 985 and 1006 were first enacted as parts of chapter 66, Sess. Laws 1891.

This court has consistently held that the requirements of § 985 as to indorsements by the official stamp and initials, construed in the light of § 1006 are mandatory and that ballots not so indorsed by both stamp and initials are void and shall not be counted. See Miller v. Schallern, 8 N. D. 395, 79 N. W. 865; Lorin v. Seitz, 8 N. D. 404, 79 N. W. 869; Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018; Perry v. Hackney, 11 N. D. 148, 90 N. W. 483; Fuerst v. Semmler, 28 N. D. 411, 149 N. W. 115; Grubb v. Dewing, 48 N. D. 774, 187 N. W. 157.

The trial court held that the provision of § 1001 requiring that election officers shall indorse absent voters ballots "in like manner that other ballots are indorsed" before depositing them in the ballot boxes, is directory only and that the provisions of § 1006 invalidating ballots unless so indorsed do not apply to such absent voters ballots. Of the 21 absent voters ballots here in question, 16 were cast for the defendant O'Connell and 5 for the plaintiff Weber. Thus the ruling of the trial court as above set out is vital to this contest, for if correct the defendant O'Connell has a clear majority over the plaintiff. If the trial court's ruling is incorrect and the ballots are invalid, then it will be necessary to pass upon the propriety of the action of the trial court respecting the other ballots here questioned.

The defendant in this behalf contends, and this was the view taken by the trial court, that the absent voters statute was an innovation in the law and was enacted long subsequent to the enactment of §§ 985 and 1006; that the legislature when it enacted the latter sections had no intention that such sections should apply to absent voters ballots, and that when the legislature in 1913 enacted the absent voters statute, it clearly did not contemplate that the provision for the indorsement of absent voters ballots should be mandatory; that the reasons for the enactment of § 1006 do not exist in the case of absent voters ballots, and the reasons not existing, this statute was not intended to apply. On the other hand, the plaintiff contends that applying the ordinary and usual rules of construction, all of the statutes governing the conduct of elections must be construed together, and that when the legislature enacted the absent voters statute in 1913 it did so having in view § 1006 and other statutes touching elections and the construction and effect given to the same by this court, and contemplated that the same should apply.

Of course the object of all statutory construction is to ascertain and give effect to the legislative intent. See Murray Bros. v. Buttles, 32 N. D. 565, 156 N. W. 207; State ex rel. Langer v. Kositsky, 38 N. D. 616, L.R.A.1918D, 237, 166 N. W. 534; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583. "If 'statutes are parts of a general system relating to the same class of subjects, and rest upon the same reasons, they should be so

construed, if possible, as to be uniform in their application and in the results which they accomplish.'" Murray Bros. v. Buttles, supra.

So it seems clear to us, applying these rules in the instant case, that we must hold that § 1006 applies to absent voters ballots as well as to other ballots. It is urged that the chief reason for indorsement of ballots as required by § 985, that is, to make sure that the elector shall vote the official ballot and shall have no opportunity to substitute in place thereof an unofficial ballot which may have been marked prior to his coming to the polls, does not apply in the case of absent voters ballots; that the legislature has carefully safeguarded every step of the proceedings prior to the depositing of the absent voter's ballot in the ballot box so that this may not occur; and that the voter ought not to be deprived of the right to cast his vote through the default or neglect of election officers since he is not present and cannot protect himself in this respect. But it must be remembered that in granting the right to vote to absent voters the legislature has the right to prescribe such reasonable requirements as it sees fit. So that regardless of reasons therefor the legislature is well within its power in imposing such a requirement. If it imposes such a requirement and the voter knows that when absent from his polling place he votes at his peril as regards defaults of the election officers, he cannot complain. Besides, it cannot be said that there is no reason for the imposition of the requirement that the ballot be indorsed. As is said in the case of Miller v. Schallern, supra: The reasons for this requirement are twofold: First, to insure the use of the official ballot; next, to identify the ballot in case of contest. Though the first of these two reasons may not exist in the case of absent voters' ballots, the second does just as much in the one case as in the other.

It must also be remembered that the only provision made for the counting of ballots and prescribing the manner in which this shall be done is contained in § 1006. The absent voters statute says nothing whatsoever respecting the manner in which the votes shall be counted. It leaves this subject to pre-existing statutes, that is, to § 1006, and, as this court has repeatedly held (see cases cited, supra), the provision of § 1006 that ballots not indorsed with stamp and initials shall be void and not counted is mandatory. We must presume, of course, that the legislature had in mind § 1006 and the judicial construction

put upon it when it enacted the absent voters statute.    State v. Gerhardt, 145 Ind. 439, 33 L.R.A. 313, 44 N. E. 469; Sutherland, Stat. Constr. § 287.    The trial court erred in receiving and counting the 21 unindorsed absent voters ballots.

Deducting the vote as disclosed by these ballots from the vote as found by the trial court, leaves O'Connell with 2126 and Weber with 2125 votes.    Therefore it becomes necessary to pass upon the trial court's determination respecting the other ballots challenged by the parties, to wit:    Exhibit 5, 22, 30, 49 and 50.

Exhibit 5 was rejected by the trial court and not counted.    It appears that the voter voting this ballot placed crosses in the squares at the right of the various names on the ballot.    In the square opposite the name O'Connell is a faint cross which has been partially erased, while in the similar square opposite the name Weber is a plain unerased cross.    That the voter attempted to erase the cross opposite the name O'Connell is clear and unmistakable.    We think, under the circumstances, there can be no question as to his intention.    He desired to vote for Weber and the vote must be counted accordingly.    See Howser v. Pepper, 8 N. D. 484, 79 N. W. 1018.

Exhibit 49 is almost identical with Exhibit 5.    This the trial court rightly counted for Weber.    In the square to the right of the name O'Connell a pencil mark appears.    This, however, is in the form of a blur.    In the square opposite the name Weber is a clear and distinct cross, just as appears opposite the names of various other candidates on the ballot.    It is clear that the voter marked a cross in the square opposite the name O'Connell and then blurred this cross and made and left a clear and distinct cross in the square opposite the name Weber. Thus it seems plain that he intended and so indicated his intention to vote for Weber.

Exhibit 30 was counted for Weber by the trial court.    In the squares at the right of the names of various candidates on the ticket the voter made a blurred pencil mark.    No other marks were made in any of the squares.    This same kind of a mark was made in the square opposite the name Weber while no mark is contained in the square opposite the name O'Connell.    The voter clearly indicated an intention to vote for the candidates thus designated and the trial court correctly counted the vote.

The trial court counted Exhibit 50 for O'Connell. There is no mark on this ballot excepting in the square at the right of the name O'Connell. This mark is a blurred pencil mark similar to a greatly enlarged dot. It occupies nearly the whole of the square. It is similar in all respects, except that it is larger and plainer, to the marks in the squares on Exhibit 30. We think that this mark evidenced an intention on the part of the voter to vote for O'Connell and that the same was properly counted.

There remains Exhibit 22. On this exhibit the voter clearly voted for three candidates. He did this by making plain and distinct crosses in the squares at the right of the respective names. These names preceded those of Weber and O'Connell in the candidates' column on the ballot. He made no mark in the square at the right of O'Connell's name. In the square opposite Weber's name he made a blurred pencil mark similar to a greatly enlarged dot which occupies practically half of the square. This vote was not counted by the trial court. The trial court said with respect thereto: "As he has put a cross opposite to the other candidates he voted for and a blur opposite Weber, it looks to the court as if he had made a mark there and then tried to blur it out. The court, at least, cannot say that it was the intention of the voter to vote for Weber. Said vote therefore is thrown out and is not allowed."

The statute, § 959, provides: ". . . There shall also be left under the name of each candidate sufficient space to write or paste a name thereunder in lieu of the one printed on the ticket and on the same line with the name of each candidate, and at the end of his name there shall be a space enclosed in a square of black lines in which the voter may designate by a *cross or other mark* his choice for each candidate opposite the name of such candidate. . . ." Thus it appears that the statute does not require that a cross be placed in the square provided in order to evidence the choice of the voter. Any mark that indicates his choice is sufficient. In this connection we think it both pertinent and persuasive that there is printed in heavy black type at the top of the official ballot used, the following: "To vote for a person whose name is printed on the ballot mark an (X) in the square at the right of the name of the person for whom you desire to vote. To vote for a person whose name is not printed on the ballot, write or paste his

name in the blank space provided for that purpose." On Exhibit 22 there is a mark opposite the name Weber but, as the trial court pointed out, this voter evidenced his vote for various other candidates by making in the square opposite each of such candidates names a clear and distinct cross. Thus it appears that he started to make a cross opposite Weber's name but changed his mind and attempted to obliterate the same. We think that it does not appear that he intended to vote for Weber and that the trial court was right in not counting such vote. See § 1006, supra.

Thus we find the vote stands 2126 for the plaintiff and 2126 for the defendant and by reason of the tie neither was elected. Such a case is controlled by § 1010, Comp. Laws 1913 which provides:

"If the requisite number of officers shall not be elected by reason of two or more persons having an equal and highest number of votes for one and the same office, the county auditor whose duty it is to compare the polls shall give notice to the several persons so having the highest and equal number of votes to attend at his office at a time appointed by him, and they shall then proceed publicly to decide by lot which of the persons so having an equal number of votes shall be declared duly elected, and such auditor shall make and deliver to the person thus declared elected a certificate of his election as hereinbefore provided."

The judgment of the district court will therefore be reversed and the court is directed to enter judgment in accordance with this opinion.

BIRDZELL, Ch., J., and BURKE, MOELLRING and ENGLERT, JJ., concur.

Justices CHRISTIANSON and BURR did not participate, Honorable GEO. H. MOELLRING, Judge of the Fifth, and Honorable M. J. ENGLERT, Judge of the First Judicial District, sitting in their stead.