THOMS, Appellant v. ANDERSEN, Respondent

(235 N.W.2d 898)

(File No. 11622. Opinion filed December 5, 1975)

Petition for rehearing denied January 8, 1976

**Steve Jorgensen, Rollyn H. Samp,** Sioux Falls, for plaintiff and appellant.

**David V. Vrooman,** Sioux Falls, for defendant and respondent.

WINANS, Justice.

The priceless right to select those officials who will both govern and serve us at the local, state and national levels has been a treasured element of our form of government for nearly two hundred years. Our ancestors and our contemporaries have too often paid a heavy toll in order to win and to preserve this democratic ideal. Current civil rights struggles and the woman's suffrage movement of an earlier part of this century as well as the recent extension of the vote to eighteen-year-olds are all significant chapters in a long and sometimes painful narrative of the history of the vote in the United States. We are deeply concerned when we hear of a growing apathy on the part of many in the exercise of the vote at both general and special elections. We are dismayed when conscientious electors disenfranchise themselves by spoiling their own ballots, albeit inadvertently. We are far more disturbed, however, when those who are sworn to abide by our laws and whose duty it is to safeguard the ballots of the electorate until they are no longer needed are careless and negligent in their obligations to a point where the people's will might seriously be thwarted and an elective office might be awarded to one not selected for it by the voters. Such appears to be the case before us today.

In the November 5, 1974, general election the results of the race for county auditor in Minnehaha County were close enough

to warrant a petition for a recount by the apparent loser, Donna Thoms, the Republican candidate. In due course, as provided for in SDCL 12-21, a three person recount board was appointed. On November 22nd the Board attempted to examine and count the absentee ballots for Precinct 3-4 but when the ballot box for this precinct was produced and opened no ballots were found inside. Upon this disconcerting discovery the Board's chairman set out in search of the missing ballots and with the aid of the county auditor who had not been a candidate for reelection the ballots were at last located, rolled in an official wrapper, stamped with an official stamp and sealed with the seals provided. They had been tossed under a counter in the county auditor's office together with the official election stamps and the unused election materials. In court proceedings held subsequently it was determined that when the precinct election superintendent found that the roll of ballots was too large for the ballot box provided for their return she had delivered them to the auditor apart from the ballot box when she made the rest of her returns early on the morning of November 6. He took them from her along with the election materials she returned and tossed them all under the counter. There they were found more than two weeks later by the Recount Board chairman. Upon locating them he brought them, still wrapped and sealed, to the recount room where all three Board members then agreed not to include them in the recount. Incredible though it seems, several days later an almost identical incident occurred with regard to the absentee ballots from Precinct 10-2. Those missing ballots also were discovered in the same area of the auditor's office as were the ballots from Precinct 3-4. Again the Board felt that they should not be included in the recount. Eventually, both sets of disputed ballots were removed from the recount room and ultimately placed in a locked box in the auditor's vault, the key to the box being left in an unsecured desk.

Upon learning of the Recount Board's refusal to count and include the questioned absentee ballots from the two precincts in their total, candidate Thoms petitioned the circuit court for a writ of certiorari to review the Board's execution of its mandate. Judge Christensen at first gave an oral order to the Board to count the ballots but revoked it before the Board had taken any action. A hearing was held in December and January and the

Court found that the decision of the Recount Board not to count the disputed ballots was correct and that the Board's decision declaring Gwen Andersen the winner over Donna Thoms by a vote of 18,705 to 18,688 should be affirmed.

■ From the foregoing decision of the circuit court Plaintiff Thoms appeals. In reviewing the action of the circuit court we find that it acted properly in affirming the Recount Board's decision not to count the disputed ballots. However, since it was entirely possible to avoid disenfranchising more than 200 electors by using the official canvass in place of the ballots themselves in the recount, we reverse the confirmation of the election and remand to the circuit court for further proceedings not inconsistent with this opinion.

■ The circuit court found not one "scintilla of evidence of bad faith, fraud or misdoing of a criminal nature involved here" and it seems clear from the testimony before it and us that this is so. It is entirely probable that both sets of ballots were left intact from the early morning hours of November 6th when delivered to the courthouse and dropped beneath the auditor's counter, through the two-to-three weeks they lay there inexplicably unnoticed, through their sojourn in the recount room, through their stay in the semi-safe vault and finally through their travels to the circuit court and to us. We have said that this probability does exist but this is not sufficient to warrant the inclusion of the ballots in the vote count. The rule of many jurisdictions we hold also to be the rule in South Dakota. In *Mentzer v. Davis*, 1899, 109 Iowa 528, 80 N.W. 557, the Iowa Supreme Court said " 'that the onus is on him who would discredit the official count, before resorting to the ballots as the best evidence of who has been elected, to show that these have been preserved with that care which precludes the suspicion of having been tampered with and the opportunity of alteration or change.' Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there was no possibility that they might have been tampered with. *  *  *  What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with." In *McMahon v. Crockett*, 1899, 12 S.D. 11, 80 N.W. 136, we held that "*  *  *  the burden is upon the

contestant to show with a reasonable degree of certainty that the ballots have neither been tampered with nor placed within reach of unauthorized persons, before they are admissible in evidence to disprove the official returns, or impugn the action of a board of canvassers." While other language in this same opinion might seem to give force to the position that it is only necessary to demonstrate a "reasonable probability" that the ballots have not been exposed to unauthorized persons in order to sustain their integrity, we in fact believe that since the proponent or contestant must show that the ballots have been properly guarded by authorized personnel what is actually demanded is in effect a showing that no reasonable *possibility* existed of the ballots having in any fashion been altered. This is in each instance a question of fact. We cannot find that the lower court was clearly erroneous in finding the ballots in question no longer suitable for a recount in view of the incredible manner in which they had been mishandled. We would have been surprised had the finding been otherwise.

When the circuit court affirmed the recount board's vote not to include the missing ballots it also confirmed the election of Gwen Andersen, the Democratic candidate, as county auditor based upon that recount absent the disputed ballots from the two precincts in question. In so doing more than two hundred electors had their properly cast votes disregarded through no fault of their own. In weighing the equities the circuit court rightly decided in favor of the integrity of the ballot box, but at the expense of the voters' franchise. This was not necessary and we think that in so doing the court below erred. It is entirely possible to safeguard the requirements of absolute ballot security and at the same time give equitable recognition to the intent of the voters. In 1899 the North Dakota Supreme Court had before it a case which dealt, *inter alia,* with ballot boxes not properly supervised after an election and it there held:

"In both precincts there was an entire absence of official custody of the ballot boxes. This fact, taken in connection with the further fact that the boxes were within the reach of unauthorized persons for a period of 70 days prior to their production in court, in our judgment destroyed their probative weight as the best evidence,

and they cannot, therefore, be allowed to impeach the canvass of the votes by the precinct officers, which was made by them as the representatives of the two political parties, in public, and under the observation of the friends of the rival candidates. The official canvass, as declared by the canvassing board, will stand therefore as to the precincts of Center and Lee." *Howser v. Pepper*, 1899, 8 N.D. 484, 79 N.W. 1018 at 1020.

In *McMahon v. Crockett,* supra, we similarly held that the results of the official canvass could not be assailed with ballots unlawfully kept. We therefore are of the opinion and we hold today that the circuit court ought to have substituted the official canvass of the absentee ballots of the two precincts, 3-4 and 10-2, in place of a recount of the ballots themselves and that the election ought to have been decided only after the canvass count on these two sets of disputed ballots had been taken into consideration. Because the circuit court did not do this it was in error in confirming the election and we remand this case to that court in order that it may decide again the results of that election after it has included the official canvass results.

Affirmed in part and reversed in part.

DOYLE, J., and BIEGELMEIER, C. J., retired, concur.

WOLLMAN and COLER, JJ., concur in part and dissent in part.

BIEGELMEIER, C. J., retired, sitting for DUNN, C. J.

WOLLMAN, Justice (concurring in part, dissenting in part).

I would reverse and remand with directions that the trial court order the recount board to count the absentee ballots from precincts 3-4 and 10-2.

SDCL 12-21-1 states that:

"The intent of the provisions of this chapter is to procure a speedy and correct determination of the true and actual count of all ballots cast at an election, which

ballots are valid on their face, and all provisions of this chapter shall be liberally construed to that end."

In the case of *Healey v. Rank*, 82 S.D. 54, 140 N.W.2d 850, this court stated that:

"The duties of a county recount board are ministerial in nature and it has no judicial or quasi judicial functions. *Smith v. Lawrence*, 2 S.D. 185, 49 N.W. 7. The board has no other powers or duties than to recount the ballots, certify the result and make a separate and distinct certificate as to disputed ballots, if any. * * *" 82 S.D. at 58, 140 N.W.2d at 852.

It should be noted that plaintiff is not attempting to discredit or overturn the official returns or to impugn the action of the board of canvassers with respect to precincts 3-4 and 10-2. Indeed, plaintiff is willing to accept the results of the official canvass with respect to these two precincts. In her offer of proof, plaintiff argued that if the absentee ballots from these two precincts were opened and counted and if the number of votes received by the two candidates for the office of auditor corresponded with the number shown on the tally sheets, return sheets and official canvass, the conclusion would be inescapable that the ballots had not been tampered with. See *Howser v. Pepper*, 8 N.D. 484, 79 N.W. 1018.

After the recount board has completed its task, the circuit court on review can determine after inspecting the ballots and considering the other evidence submitted by plaintiff concerning the care, custody and appearance of the ballots whether their condition is such as to free them from suspicion. *Tschetter v. Ray*, 28 S.D. 604, 134 N.W. 796; *Althen v. Fowler*, 35 S.D. 363, 152 N.W. 337. If the trial court is not satisfied that the ballots were not tampered with after their delivery to the auditor's office, then the official canvass can be looked to to determine the outcome of the race in the two precincts in question. *McMahon v. Crockett*, 12 S.D. 11, 80 N.W. 136.

COLER, Justice (concurring in part and dissenting in part).

I agree with the majority opinion insofar as it would reverse the holding of the trial court disenfranchising the voters of the

two precincts but I would further remand with directions that the ballots themselves should have been counted.

I concur with Justice Wollman wherein, as he points out, SDCL 12-21-1 is the controlling provision as to the purpose to be served by recount. I would add, however, that SDCL 12-20-35, as well as the numerous decisions of this court, including *McMahon v. Crockett,* 1899, 12 S.D. 11, 80 N.W. 136; *Tschetter v. Ray,* 1912, 28 S.D. 604, 134 N.W. 796 and *Althen v. Fowler,* 1915, 35 S.D. 363, 152 N.W. 337, clearly mandate that the ballots are to be received in evidence. Even in *Howser v. Pepper,* 1899, 8 N.D. 484, 79 N.W. 1018, cited by the majority opinion in support of its position, all of the challenged ballots were in evidence and it was only in those precincts where that court found the ballots tainted and, therefore, not the best evidence, that it used the secondary evidence, the official, canvass, to determine the result of the election in those precincts.

SDCL 12-20-20 and 12-20-21 presume, as do SDCL 12-20-32, 12-20-34 and 12-21-24, compliance by election officials sworn to uphold those laws, so that the voted ballots will be placed in ballot boxes which are sealed and delivered to the person in charge of the election. There was an irregularity in how these ballots were handled in precincts 3-4 and 10-2 but the fault was not found to. be criminal in nature by the trial court. The county auditor is only required "to keep the ballot boxes   *  *  * in the same condition as when received", SDCL 12-20-32, and is not, as was the clerk of courts, who formerly had the duty of possession of the ballot boxes, required specifically to place them in a vault or other place inaccessible to anyone but an authorized person. SDCL 12-20-33, repealed by Ch. 118, § 200, S.L.1974.

The ballots have never been reviewed to ascertain whether or not they were tampered with and that determination should be made. The majority opinion notes that the trial court found that there is not one "scintilla of evidence of bad faith, fraud or misdoing of a criminal nature involved here." That finding can only be supported if the ballots themselves are reviewed. As stated by this court in *Tschetter v. Ray,* supra:

> "While the evidence showing where and how the boxes
> and envelopes had been cared for since election showed

lack of that proper care that should be given such boxes and envelopes, yet we believe the trial court was fully justified in receiving such exhibits for the purpose of ascertaining what these exhibits themselves would tend to prove." 28 S.D. at 607, 134 N.W. at 797.

In *Althen v. Fowler*, supra, following the precedent established in *Tschetter v. Ray*, supra, this court overruled the trial court and ordered the ballots to be received in evidence because:

> "* * * the ends of justice demanded that it [the trial court] receive in evidence and open the several boxes, leaving the matter of the counting of the ballots to be determined thereafter when properly presented to such court." 35 S.D. at 367, 152 N.W. at 337.

I submit that these decisions, coupled with SDCL 12-20-35 and 12-21-1, require a review of the ballots, whether or not they were boxed and to this extent, though it might not change the result, I dissent from the majority opinion.