## UNITED STATES v. BADINELLI et al.

*(Circuit Court, W. D. Tennessee.* December 20, 1888.)

**1. ELECTIONS AND VOTERS—OFFENSES AGAINST ELECTION LAWS—COUNTING THE VOTE.**
    The United States Revised Statutes, § 5515, punishes officers of election for some violation only of their duty as prescribed by law, and not for a violation of any duty imposed by a mere moral sense of fairness and justice in counting the votes. If, therefore, they undertake to count the ballots in a manner not authorized by law, no duty as to that counting is imposed for a violation of which they may be punished under the federal statute. The offense punishable, in such a case, is the counting of the votes in the unlawful manner, no matter how fairly done.

**2. SAME—PLACE OF COUNTING—EXCLUSION OF ELECTORS.**
    The Tennessee Code requires a free, open, and public counting of the vote at the place where the vote is polled. and nowhere else. It does not provide for a count in a private room, to which the ballot-box has been taken, protected by policemen from the intrusion of all not admitted by the election officers. It is therefore no violation of a duty punishable by the federal statute to exclude an elector from such an unlawful counting. whether he be entitled to be present at a public and lawful counting at the polling place or not; but the indictment should have charged the offense of violating their

duty in not counting the vote at the place and in the manner required by law, and in removing the ballot-box from that place, and counting the vote, unlawfully, in a private room.

**3. SAME—RIGHT OF ELECTOR TO BE PRESENT.**
Under the Tennessee Code those electors who have the right to vote in a precinct have also the right to be present at the counting of the vote in the free. open, and public manner required by law at the polling place appointed and registered for that purpose; and while a candidate has a right to vote in that precinct, if he has not exercised that right but has voted elsewhere, he is not an "elector" at that precinct, with the statutory right to witness the count, though he may, as any citizen may, be present at the public count provided by law. no one being prohibited from such attendance. Yet, it is no offense under the federal statute to exclude him from an unlawful count in a private room, since no such counting can be lawful in Tennessee, and no duty of admitting or excluding electors or others from such a place is imposed by law.

On Indictment for Violation of Election Laws.

At the congressional elections held at the Fourth ward in the city of Memphis on the 6th day of November, 1888, the defendants were the election officers charged with the duty of holding the election at that place. When the polls had closed they carried the ballot-box, accompanied by the clerks and federal supervisors, through the saloon in front of which the polls were held into the back yard, up a flight of steps, and through a hallway into a private room, where the counting was fairly done, according to the testimony of the federal supervisor for the republican party, the only witness examined on that point, and who helped to do the counting. The witness J. E. Bigelow, who was the republican candidate for state senator, being present at the closing of the polls, and desiring to witness the count, followed the box through the saloon and into the back room of the saloon, where he was told by two of the defendants that he could not go with them to the place where the counting was to be done. He protested that he was an elector and a candidate, that he had a right to be present at the counting, and that he proposed to exercise his legal right in that regard. He was told to go back, but persisted in following the defendants and the box into the back yard and up the flight of steps; but at the head of the stairway he was met by two policemen, who told him he could go no further; that their orders were to enforce obedience to the instructions of the election officers, and they had been directed to exclude him from following them into the room where the counting was to be done. He departed, and was not present at the count. The federal supervisor, who was examined as a witness, being appealed to by Judge Bigelow, insisted that Bigelow had the right to be present, and demanded of defendants that he should be allowed to exercise that right, but they still refused him admittance to the count. Bigelow did not reside in that ward of the city, nor in that civil district of the county, but in another civil district in the country, where he had voted previously to coming to the Fourth ward to watch the election. There was some proof as to the character of the crowd and its conduct, the inclemency of the day, and the details of the surroundings at the time of the exclusion, not necessary to mention here. The defendants were indicted under Revised Statutes, § 5515, for a failure to perform

their duty "to count the ballots cast at such election in the presence of such electors as chose to attend, in that they did willfully and unlawfully refuse to allow one J. E. Bigelow to be present and attend the counting of the ballots cast at said election, the said Bigelow then and there being an elector who chose to be present at said counting of the ballots, and was then and there requesting and demanding of said officers that he be permitted and allowed to attend said counting as such elector, contrary to the form," etc. The second count of the indictment charges an unlawful denial of the right to be present "by excluding him from the room in which the counting of said ballots was being made," contrary, etc. The duty alleged to be violated is that prescribed by the Tennessee Code, § 861, (Mill. & V. Code, § 1068,) as follows:

"When the election is finished, the returning officer and judges shall, in the presence of such of the electors as may choose to attend, open the box, and read aloud the names of the persons which shall appear in each ballot; and the clerks at the same time shall number the ballots, each clerk separately."

Other provisions of the Tennessee Code, not necessary to be set out more fully, require every one to vote in the civil district or ward in which he resides, except that certain persons, including candidates, may vote anywhere in the city or county where they happen to be on election day. When the district attorney had closed his proof, the defendants moved the court to instruct the jury to find for them upon their plea of not guilty, because the facts showed that the witness Bigelow had voted in his home precinct, and, although a candidate, that he had no right to be present at the counting of the ballots, he not being an "elector" in the Fourth ward. The defendants did not wish to demur to the evidence because, if the decision upon the questions of law to be argued should be decided against them, they wished to examine witnesses then in attendance. The court declined to adopt that practice in criminal cases, if at all in any case, and required argument as to its propriety; but the district attorney thereupon waived any objection in this case, and agreed that the motion might be considered upon its merits, as if upon demurrer to the evidence, and, if decided adversely to the defendants, that they might then put in their proof notwithstanding; to which arrangement the court assented for the purposes of this case only.

*H. W. McCorry*, U. S. Dist. Atty., and *H. C. Anderson*, Asst. U. S. Dist. Atty.

*Luke E. Wright*, *W H. Carroll*, *Watson & Hirsch*, *E. F. Adams*, and *Zack Taylor*, for defendants.

HAMMOND, J., (*after stating the facts as above.*) As was well remarked by one of the learned counsel for the defendants, our election laws constitute, as a whole, a scheme for the regulation of the proceeding intended to secure to the people a free, fair, and honest election, to facilitate the right to vote, and preserve the purity of the ballot-box; and they must, in construing any part of them, be examined as a whole. As arranged in the sections of the Code of 1858 they will be found to be broken up somewhat, and disarranged from their original contexts, and, when restored,

their meaning is often made more clear. They are found in chapter 2 of article 6 of that Code pertaining to "Officers and Elections," the original basis being chapter 9 of the acts of 1796, passed at the first session of the general assembly of the state, from which the section in controversy here was taken. Code 1858, §§ 812–887; Thomp. & S. Code, §§ 812–887; Mill. & V. Code, §§ 1003–1096. There cannot be the least doubt upon reading them that the intention is to provide for a perfectly open and public counting of the vote of each precinct at the place in that precinct where the election is held. The county court is required to designate such places for each precinct at least six months before the election, and to enter the designations of record. Act 1827, c. 27, § 1; Code 1858, §§ 837, 837*a;* Thomp. & S. Code, § 837 *et seq.;* Mill. & V. Code, §§ 1041–1043. Then come the provisions for counting the vote and making the returns, with which we have to deal here, among the sections regulating "the proceedings at the polls," and after that those sections regulating the "proceedings after the polls are closed," which classifications, titles, and subtitles are a part of the original Code itself. From the whole scheme it is apparent that the counting must take place at the polling place, and can be had nowhere else without violating the duties imposed by these laws, and "in the presence of such of the electors as may choose to attend." Code 1858, art. 7, §§ 846–863*a;* Id. art. 8, §§ 864–871; Id. art. 9, §§ 872–887; Thomp. & S. Code, §§ 846–887; Mill. & V. Code, §§ 1053–1096.

If, therefore, these defendants had been indicted here for removing the ballot-box from the place designated by the county court for holding the election, including the count in the presence of such of the electors as should choose "to attend," they would, on the proof as now presented under this proceeding, be guilty under the Revised Statutes of the United States of violating their duty as election officers under the laws of the state, and subject to the penalties imposed by congress. Rev. St. § 5515. The state laws do not, evidently, contemplate such a proceeding as that shown by this proof, where the officers of election carried the ballots to another place than that designated for holding the election in the presence of such electors as "shall attend" that election, either for the purpose of casting their ballots under section 849 of the Code, or of witnessing the count under sections 860 and 861, Code 1858; Mill. & V. Code, §§ 1056, 1067, 1068,—these sections being at first parts of the same section, and even of the same sentence, of the original act of 1796. 1 Scott's Rev. 557, c. 9, § 3. This place to which they unlawfully carried the box to make the count was a small private room into which only such persons were admitted as the officers chose to admit; policemen being stationed to guard the approaches to it, and enforce their orders in that behalf. As one of the learned counsel for the defendants said in argument, it was never contemplated that in making this count the officers should be put to the peril of deciding which of the electors should possess the necessary qualifications of residence, or what not, entitling them to be present at the count. The counsel urged that the officers, in the nature of the case, could only be required to admit those who had dem-

onstrated their right to be present at the count by the acceptance of their votes and the placing of their names upon the poll-lists. The truth is, the statutes never contemplated or intended to provide that the officers of election should be put to the examination of any evidence whatever to determine that question at all; not any more of the votes as appearing on the poll-lists than of other evidence *aliunde* that record. Neither of these was contemplated, because no such proceeding as a count in a closed or private room, from which the officials might exclude or admit electors, according to any evidence whatever, was within the view of the legislature. These laws do not provide for such a situation as that any more than they do for a count with military guards, and military orders for the admission or exclusion of persons desiring to be present at the count. No such proceedings are provided for at elections in the state of Tennessee, but an open, free, and fair election in the presence of the electors choosing to attend at a particular place previously designated by law and recorded, where the casting of the ballots and their counting immediately upon the closing of the polls shall take place, and neither of these functions can be performed lawfully at any other place, ---not the counting any more than the casting of the ballots. Therefore there was no duty devolved upon these officers to count the votes in another place than that where they were cast, protected by policemen or themselves from improper intrusion of those not entitled to be present; and of consequence they cannot be held criminally liable for any supposed violation of duty in that regard, either by the admission of improper persons to the count or the exclusion of proper persons therefrom. The criminal offense is in resorting to such a place to do the counting, and for that these defendants are not indicted. That which they were doing being unlawful, there was no lawful way to perform the duty, and they cannot be charged by indictment for irregularities in doing it, but should have been charged for the unlawfulness of the entire performance.

If, however, the court be mistaken in this view of the law, which seems so plainly written in every feature of these election laws from the original act of 1796, and even of the laws in vogue before our state was organized, to the present day, the result must be the same if it be conceded that the count at that place was lawful; because, when we read the one sentence and the one section of the original act of 1796, from which the existing sections of the Code are taken, it is perfectly plain that the words "such of the electors as may choose to attend," used in section 861, (Mill. & V. Code, § 1068,) are meant to describe the self-same persons previously mentioned in section 849,---and likewise so in the original act,---as "every person qualified to vote, in the manner directed by the constitution, who shall attend for that purpose at any election," etc. Mill. & V. Code, § 1056. That is to say, any and all persons attending at that precinct for the purpose of voting have the statutory right to be present when the returning officer and judges shall "open the box and read aloud the names of the persons which shall appear in each ballot; and the clerks at the same time shall number the ballots, each clerk separately." Code, § 861; Mill. & V. Code, § 1068.

The meaning of the word "elector" in our constitution and laws is not uniform, but depends upon the subject-matter of the legislation and the particular context, as is shown by a careful reading of these statutes themselves. Here it means one qualified according to the constitution and laws of the state to vote at that particular precinct, and who attends there for that purpose. The court thinks the place must be the same and the "attendance" the same, under either section or under both of them; but certainly the mode and manner of the count, and the designated "electors" entitled to be present, must be the same, if the places may be different.

Now, the prosecuting witness Bigelow did not attend at that time and place, or at either place, if there may be two, to vote at that precinct. He was disqualified from voting there, because he had already voted at his home precinct; and if he had offered to vote, and had been challenged, and the authorized questions asked, he would have been excluded, because he must have answered that he had voted before at the same election. Code, § 854; Mill. & V. Code, § 1060. It is true that, being a candidate for state senator, he had the right to vote out of his civil district and at this place, and might have attended there for that purpose, but he did not exercise this option or right, but, on the contrary, chose to vote at another precinct, and was not, therefore, an "elector" at this place. It is an inevitable result that he was not an elector entitled to be present at the count, if the count could be made on any such theory as was adopted, and as is implied by the indictment in this case. But the court does not sanction that theory or implication for the reasons already stated, that it is repugnant to the whole scheme of our election laws, and leads to inextricable confusion and disastrous consequences, as is obvious to any intelligence whatever. The judgment which we give is therefore placed upon the first ground stated, and not that just considered. It is true, these laws were made to prevent frauds, and should be construed to that end, and the construction placed upon them by the district attorney best tends to accomplish that result, no doubt; but because the legislature might and should allow all electors, and especially all candidates, to witness any count that they may wish to witness where their interests are involved, it does not follow that it has done so, if we may adopt the erroneous view of these statutes just considered. The laws, properly construed, do not prohibit anybody from attending an election precinct during the progress of the whole performance, and if the plan of holding the election which I have pointed out as the lawful one be adopted, and there be a free and open taking of the ballots, and a free and open counting of the same, as a continuous operation at the place designated by law and recorded, and all in the presence of the electors attending there for that purpose, all well-behaved persons, even strangers and electors at other precincts, and all candidates, may stand by and see the performance go on from the beginning to the end; and fraud is thus reduced to a minimum, if not made impossible. It is only when resort is had to the unlawful method of taking the ballot-box to another place, not open and free to all the electors of that precinct to attend at will, but requiring ad-

mission by permission of some one or more persons usurping and assuming the function of deciding who shall and who shall not be present at the count, that questions can arise as to the right of any one to be present, or the right of any one to exclude him. There being no such theory in the law itself, provision is not made for such a proceeding, or for deciding any questions concerning it; but, on the contrary, provision is made for the punishment of those officers of election who resort to that or any other unlawful method. The result is that these defendants, not being indicted for the offense they did commit, if the proof be true, as it is agreed we may assume it to be for the purposes of this case, but for acts not provided against by the penal statute, the verdict of this jury must be in their favor, and that they be discharged. So ordered.

Since the foregoing opinion was written it has occurred to me that, in order to avoid any possible misapprehension, it should be added that this ruling does not proceed upon the theory that it is lawful to exclude any one from such a counting of the ballots as the defendants undertook, or felt authorized to make, but solely upon the ground that the federal statute punishes only a violation of a duty imposed upon the election officers by law; and it must be confined in its operation to that offense, and cannot be extended to violations of duty imposed by a high moral sense of fairness and justice in making the count in whatever manner they may choose for convenience or comfort; nor to a violation of any supposed duty, imposed upon them by the nature of the business in hand, of adopting that plan suggested or offered to them of so conducting the count as to allay whatever of suspicion or apprehension might exist of possible fraud on their part; nor to a violation of any supposed duty on their part of conducting the count according to their own construction or apprehension of the duties imposed upon them by the statute regulating the method of the count, so that the statute, as they understand it, may be complied with. Congress might possibly have punished election officers for all such violations as these, or others that may be imagined as pertinent to the subject, growing out of that general duty to do that which is honest and fair in the performance of the function of counting the votes at an election, but it has been content to enforce a compliance with the statutory methods of making the count, whatever they be, by punishing a violation of that duty, and nothing else has been punished in that behalf. The object of the federal statute is to compel these defendants to hold the election in all things according to law, and to do the counting according to law, and not to compel them to fairly and honestly do all the things which they may do, however they proceed to do them, whether willfully or through a misapprehension of their duties under the law; just as it is the object of the law against larceny to punish the thief for the felonious taking of one's horse, and not to punish him for refusing a polite request by the owner for a return of the animal; and he should be indicted for the taking, and not the refusal to return upon request.