J. F. Mentzer, Contestant v. W. M. Davis, Incumbent, Appellant.

**Election Contest:** APPEAL TO DISTRICT COURT. Notice of appeal from court of contest to district court is not premature, where given after the judges had announced their decision, though before it was reduced to writing and filed.

BOND ON APPEAL. The statute not expressly requiring bond on appeal from court of contest to the district court, and no stay of proceeding being sought, bond need not be given.

BALLOTS: *Admissibility of evidence.* Ballots cast in a certain precinct not having been returned by the judges as voted, but having afterwards been gathered up from the building. and returned on the second day after the election, should not be counted on a contest.

PRESERVATION: *Review of admission in evidence by trial judge.* Where ballots were folded, strung on wires, sealed, placed in boxes, and in this condition delivered to the county auditor, and placed in his vault and there kept till placed by him in a safe, to which he alone had a key. decision of the trial judge that the ballots were properly preserved and admissible on a contest will not be disturbed, though the vault was entered by others than the officials, the auditor or his deputy always being present, and the ballots being kept in view of the auditor from his table, though the night before they were placed in the safe the vault was found unlocked shortly after the auditor left in the evening, and the sack containing the ballots from one precinct was afterwards found ripped at the bottom, the evidence tending strongly to show that this was due to defective stitching or the unraveling of the threads.

*Appeal from Marion District Court.*—HON. A. W. WILKINSON, Judge.

TUESDAY, OCTOBER 24, 1899.

THIS is a contest over the right to hold the office of sheriff of Marion county. The board of supervisors, acting as a canvassing board, found that the incumbent had a plurality of one vote over the contestant. Contestant appealed, and the court of contest, authorized by statute, found that he (contestant) was elected. Incumbent served notice of appeal to the district court, but gave no bond. The district court, after hearing all the evidence, directed a verdict for contestant, and incumbent appeals.—*Affirmed.*

*Hays & Amos* for appellant.

*Henderson & Berry* and *Kinkead, Mentzer & Granger* for appellee.

DEEMER, J.—Appellee says we have no jurisdiction of the case (1) because no proper notice of appeal was given from the decision of the court of contest; (2) because incumbent gave no bond after serving his notice of appeal; and (3) because incumbent consented to and requested the finding made by the court of contest.

In support of the first point, he says the notice of appeal was served before the decision of the court of contest was announced. There is no doubt that the notice was served before any formal entry of judgment was made by the court. But we think the trial court was justified in finding that the judges had in fact announced their decision before the notice was served. All that was done after that time was to reduce that decision to writing and file it with the proper authorities. In other words, the decision had been made before the appeal was taken, but the written evidence of that decision had not been made. The appeal was not prematurely taken. *McIntosh v. Livingston,* 41 Iowa, 219; Freeman Judgments, section 38; *Genella v. Relyea,* 32 Cal., 159; *Kehoe v. Blethen,* 10 Nev. 445.

We do not think there is such evidence of consent to the judgment rendered by the court of contest as to justify us in holding that the incumbent was not aggrieved by the finding.

Regarding the failure to give bond, the statute does not, in express terms, require it; and, as no stay of proceedings is sought, we see no reason for holding that one should be given. *Robertson v. Coal Co.,* 27 Iowa, 245; *Bremer County Bank v. Bremer County,* 42 Iowa, 397. Indeed, the statute (Code, section 1222) clearly indicates that a bond is not required, unless stay of execution is sought.

II. On the merits of the case, it is contended that the court was in error in admitting in evidence, the ballots cast at the election and in refusing to submit certain special

interrogatories to the jury. Virtually, there is but one question for solution, and that is, were the ballots so preserved, after they were deposited by the electors, as that the court was justified in admitting them in evidence? The rule as to the preservation and care of ballots cast by the electors is well understood. Quoting from McCrary Election, p. 349, we said in *Davenport v. Olerich,* 104 Iowa, 196: "Before the ballots should be allowed in evidence to overturn the official count and return, it should appear affirmatively that they have been safely kept by the proper custodian of the law; that they have not been exposed to the public or handled by unauthorized persons; and that no opportunity has been given for tampering with them,"— citing a number of cases. We further said in that case "that the onus is on him who would discredit the official count, before resorting to the ballots as the best evidence of who has been elected, to show that these have been preserved with that care which precludes the suspicion of having been tampered with and the opportunity of alteration or change." Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there is no possibility that they might have been tampered with. To adopt such a rule, would be to exclude the ballots entirely; for we can hardly imagine a case where they might not be tampered with. No safe is so secure as that it may not be unlocked, and no vault so perfect that it may not be entered. What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with.

The statutory requirements as to the preservation of ballots after they have been cast and counted by the judges of election are fully set out in the *Davenport Case,* and need not be repeated. With one exception, the ballots in this case were returned to the county auditor within twenty-four hours after the polls closed. Those cast in what is known as "Bussey Precinct" were not returned until the second

day after the election. The ballots were folded, strung on wire, and placed in sacks. The sacks were then sealed, and placed in boxes, and in this condition were delivered to the county auditor. These boxes were placed in the auditor's vault in the court house, where they remained until placed in an iron safe, as hereinafter described. This vault is about twenty by thirty feet in dimensions, and, as we understand it, extends from the bottom of the first, to the top of the second, floor of the court house. The lower part of it is called the sub-vault, and is connected with the upper part by an iron stairway. The upper and main door to the vault is in the south side of the auditor's office. It is an iron door, and is supplied with a combination lock. The upper floor is used for the keeping of books and papers belonging to the office, and is supplied with a table and some chairs. Both the upper and lower vaults have several windows. Prior to the time the ballots were deposited with the auditor, the public generally had access to the vault, and they may have had freedom of access after that time, but after the ballots were returned to the auditor no person was permitted to be in the vault unless the auditor or his deputy was present. When the ballots were returned, the auditor placed them in the upper vault, and in such position as to be at all times within his range of vision from the table where he did his work. The auditor and his deputy were the only persons, we think, who had the combinations to the locks on the vault doors, although there is some evidence tending to show that the contestant once had them. If he did, he got them in virtue of his office as sheriff, long before the election was held. A few days after the election, the auditor was at his office, engaged in official labor, until about 9:30 o'clock in the evening, when he left for home. The janitor of the building entered his office shortly thereafter, on his nightly round, and discovered that the vault door was closed, but not locked. At or about that time the contestant, who then held the office of sheriff, appeared at the front door of the auditor's

office in search of the janitor.  The janitor informed him
that the vault door was unlocked, and he immediately
directed the janitor to close and lock it.  Contestant did
not go into the auditor's office, but immediately left, and
went about his business.  The next morning the janitor.
informed the auditor about finding the vault door unlocked,
and the auditor thereupon procured a sheet-iron safe, and,
after having removed the ballots from the box, placed them
in the safe, to which he alone carried the key, where they
were kept until the hearing before the court of contest. Upon
that hearing it was found that the sack containing the ballots
from Summit township was torn or ripped at the bottom, the
rent being from three to six inches in length, and upon a
recount it was found that there were very material changes
between the result as found on the count and the returns
made by the judges of election.  The ballots from Bussey
township were not returned, as we have said, until the sec-
ond day after the election.  By mistake, the judges did not
return the ballots as voted.  They were afterwards gathered
up from the building in which the election had been held,
and returned as before stated.

We do not think these votes should be counted.  It
is not necessary to determine whether or not the votes from
Summit township should be counted; for, if we should reject
the ballots from both these precincts, it would not affect the
result, as contestant would still have a plurality.  The only
question is whether or not, in view of these facts, there
should be a recount of any of the ballots.  Appellant con-
tends that there was such opportunity for tampering with
the ballots by unauthorized persons as to afford a reasonable
probability of their having been tampered with and changed,
and that the integrity of the ballots has been so shaken as
that they should not be received in evidence.  He points to
the rent in the sack as strong corroborative evidence that
they were in fact tampered with, and says that the court
erred in directing a verdict for contestant.  His counsel pre-

sents a learned argument in support of the position, but we are not prepared to assent to the conclusion. The evidence tends strongly to show that the hole in the sack in which Summit township ballots were kept was due to defective stitching or to a raveling out of the threads, and we are abundantly satisfied that none of the ballots could have been tampered with through the rent in the sack. Again, the trial court had the sack itself, as well as all the other evidence, before him, and we are not disposed to interfere with his conclusion that the ballots were not tampered with. The *Davenport Case* is very different in its facts, as an examination will show; and in that case the trial court rejected the ballots, after hearing all the evidence. In this case he admitted them in evidence, and directed a verdict for the contestant. If the trial court was right in admitting, the evidence, he was also right in directing the verdict; for, if a recount was proper, there is no question of contestant's election. If right in directing a verdict, then he was also right in refusing to submit the special interrogatories submitted by incumbent, for there was nothing for the jury to consider. Primarily, it was for the court to determine the admissibility of the ballots as evidence. It concluded they were admissible, and we do not feel justified in disturbing the ruling. No prejudicial error appears, and the judgment is AFFIRMED.

GRANGER, J., taking no part.