EDGAR A. TRAEGER, Contestant, Appellee, v. PHILIP K. MESKEL, Incumbent, Appellant.

No. 42209.

JANUARY 9, 1934.

E. R. O'Brien, for appellant.

Estey & Estey, for appellee.

DONEGAN, J.—At the general election held on November 8, 1932, Edgar A. Traeger and Philip K. Meskel were candidates on opposing tickets for the office of clerk of the district court of Fayette county, Iowa. Some of the ballots cast at the election were returned to the county auditor on the night of the election and some on the following day, and, when thus returned, they were by him placed in the vault in his office. On November 9 or 10, 1932, the county auditor removed the sacks containing the ballots cast at the election from the vault in his office to the attic of the courthouse where they were by him placed in a pile upon the floor. On Monday, November 14, 1932, the official canvass of the votes at the elec-

tion on November 8, 1932, was commenced by the board of supervisors, and was completed on Wednesday, November 16th. According to this official canvass, Philip K. Meskel was declared elected by a majority of 249 votes.

On Monday, November 28, 1932, said Edgar A. Traeger filed a contest in the usual way in the office of the auditor of Fayette county, Iowa. On the evening of this same day, the county auditor returned to the courthouse and removed the sacks containing the ballots from the place in which they had been piled on the floor in the attic to the private office attached to the office of the county auditor. Upon the trial of the contest by the contest court, Traeger, the contestant, was declared elected by 113 votes. From this decision the incumbent, Meskel, appealed to the district court of Fayette county, and, upon trial before such court, the finding of the contest court was sustained. From the order of the district court of Fayette county sustaining the finding of the contest court, the incumbent appeals.

In the trial before the contest court, and also before the district court, ballots cast at the election were offered by the contestant, and the conclusion reached by the contest court and sustained by the district court was based upon a recount of the ballots. The incumbent objected to such recount on the ground that the contestant had not shown that the ballots had been preserved, and the question thus presented is the principal issue upon this appeal. When the ballots from different precincts were returned to the auditor's office, they were in separate sacks, each sack containing the ballots of one of the 29 voting precincts in the county. As above stated, the sacks containing the ballots were removed from the auditor's office to the attic of the courthouse either the first day or the second day following the election, and were placed in a pile upon the floor.

It appears without dispute in the evidence that the courthouse at West Union in Fayette county consists of a basement, a second and third floors upon which most of the county offices are situated, and the fourth floor or attic. Besides stairways connecting the different floors, there is an automatic elevator which runs from the basement to the attic. Any person desiring to use the elevator can push a button on the outside of the elevator entrance and this automatically brings the elevator to the floor upon which he is located. After entering the elevator there are four buttons, one marked B for the basement, one marked 2 for the second floor, one marked

3 for the third floor, and one marked A for the attic. So far as the evidence shows, the elevator was never locked, and on the attic floor the door of the elevator opened directly into the attic with no other door between. The elevator was commonly used by officers and their assistants and by visitors to the courthouse. During the times that the outside doors of the courthouse were closed, entrance could be obtained only by those having keys. It appears, however, that keys were in the possession of all the officials, their deputies, and assistants. It further appears that during the time the ballots were stored in the attic, access to the courthouse was given to two trusties who were serving sentences in the county jail and who performed work in connection with the heating plant in the basement. It thus appears that the attic where the ballots were stored was available to practically any one who desired to visit it during the daytime, and to any one who might gain access to the courthouse at other times.

When the sacks containing the ballots were presented to the contest court, it appears in the evidence that only one of these sacks was sealed in such a way as to indicate the voting precinct from which it came. On all the other sacks the ends of the strings were sealed with wax, but there was no impression or identification mark upon the seals. It further appears that the strings with which two of the sacks were tied were of a different kind and material from that used on all of the other sacks. In 19 of the precincts recounted, there was a total change of 6 votes in favor of the contestant. In eight of the remaining precincts, the ballots when removed from the sacks showed that they were not folded and wired as required by the statute, but that they were laid flat, a flexible wire passed through cither the top or the bottom of the ballots, and the ends of the wire fastened together. There is evidence tending to show that on some of the ballots from these eight precincts the cross marked in the square in front of the name of the contestant was carried through as an impression upon ballots underneath, in some cases extending to the third ballot underneath the ballot which was marked. The recount of the ballots from these eight precincts reduced the number of votes for the incumbent-appellant from the official count of 3,720 to 3,657. The incumbent-appellant contends that, in the face of the facts thus presented, the contestant-appellee failed to make the necessary showing that the ballots had .been properly preserved, and that the ballots should not have been presented in evidence.

In the case of Davenport v. Olerich, 104 Iowa 194, 73 N. W. 603, the trial court held that the ballots had not been properly preserved. After referring to the provisions of the statute of this state in reference to the preservation of the ballots, we said:

"It will thus be observed that the strictest vigilance in the care and preservation of the ballots is enjoined by the legislature, and the possibility of any interference with them carefully guarded against. Security of the ballot after being cast is quite as important as freedom in casting it, if the result as finally announced shall represent the actual choice of the electors. To this end we hold, in harmony with the authorities cited, and the evident purpose of the legislature, that the onus is on him who would discredit the official count, before resorting to the ballots as the best evidence of who has been elected, to show that these have been preserved with that care which precludes the suspicion of having been tampered with, and the opportunity of alteration or change."

In Mentzer v. Davis, 109 Iowa 528, 80 N. W. 557, the facts were distinguished from those in the case of Davenport v. Olerich, supra, and the ballots were admitted. In referring to the rule laid down in the Davenport case, we said:

"Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there is no possibility that they might have been tampered with. To adopt such a rule, would be to exclude the ballots entirely; for we can hardly imagine a case where they might not be tampered with. No safe is so secure that it may not be unlocked, and no vault so perfect that it may not be entered. *What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with.*" (Italics supplied.)

In the case of De Long v. Brown, 113 Iowa, 370, 85 N. W. 624, we reaffirmed the rule laid down in the case of Mentzer v. Davis, supra, and said:

"While these circumstances, and also the presumption obtaining that an officer has performed his duty, should be given weight, we do not think they alone afford sufficient assurance of the identity and genuineness of the ballots. The official count as finally de-

clared with respect to county officers is the ultimate conclusion of many officers presumed to have faithfully performed their respective duties, and concerning the correctness of which a very strong presumption obtains,—so strong that it ought not to be overcome by evidence, peculiarly susceptible to change, unless proven, not merely presumed, to have been properly preserved. This preliminary proof, unless waived, is essential to the competency of the ballots as evidence for any purpose as against the official count, and certainly no averment in the pleading is required as a basis for an objection to such incompetency."

In the recent case of Matzdorff v. Thompson, 217 Iowa 961, 251 N. W. 867, the facts are very similar to the facts in the case now before us. In that case the ballots were stored in a room in the basement of the courthouse. This room could only be reached by going through another room opening into the men's public washroom. There was an ordinary barn latch but no lock upon the door leading into the room in which the ballots were placed. Between the men's washroom, however, and the room through which it was necessary to pass in order to reach the place where the ballots were stored, was a partition which did not reach to within two or three feet of the ceiling. In this partition there was a door on which there was a spring lock. The evidence, however, was that the opening between the door and the casing was so wide that the lock could be sprung by the use of a nail or a lead pencil or any other hard substance by simply inserting this and pushing back the lock. In fact, it appeared that this lock was commonly opened by the use of a bottle opener which was placed upon a ledge on the partition above the door. In that case the trial court refused to allow the ballots to be introduced in evidence, on the ground that it was not shown that they had been properly preserved. In affirming the case, we said:

"Although the evidence as introduced might not show any suspicious circumstance tending to show that the ballots were actually tampered with, it does show without dispute that they were not carefully preserved by the county auditor as required by law. In fact, it appears that the ballots, from November 9th to November 19th, were as much in the possession of any other county official as in the possession of the auditor. Access to the ballots was just as easy to the other county officials, and to anyone frequenting the

courthouse during those ten days, as it was to the county auditor. Under such a condition it can hardly be held that the ballots were being carefully preserved by the county auditor."

It is argued in this case that the evidence of the county auditor showed that the sacks containing the ballots, when removed by him from the attic back to his office, were piled in the same manner as when placed there by him, and that there was nothing to indicate that anyone had tampered with them during the time they were in the attic. It is hardly probable that, if anyone had interfered with the sacks, he would leave any evidence of that fact. On the contrary, it is only reasonable to suppose that anyone attempting to tamper with the ballots would take every precaution to leave no evidence of his act.

Appellee further contends that the evidence of every official and assistant in the courthouse, who had access to the building, shows that none of them at any time ever touched the sacks containing the ballots while they were stored in the attic. Again, it is hardly probable that, if any person had actually tampered with the sacks, he would admit having done so. As stated in DeLong v. Brown, supra:

"In such a case it cannot be expected that any actual interference will be shown, nor that testimony of those having the opportunity to meddle therewith, and denying having done so, will be refuted. The effectiveness of the tampering necessarily depends on the secrecy with which it is done, and ordinarily the ballots themselves alone bear witness to the facts."

The evidence of these officials, however, is not sufficient to show that the sacks containing the ballots may not have been tampered with, because, in view of the accessibility of the attic by means of the elevator, it would have been just as possible and perhaps more probable that, if any tampering had taken place in connection with the sacks containing the ballots, it would have been done by some person other than any of the public officials who testified in this case. As stated in the Matzdorff case:

"While we realize that the former stringent rule on this question has been somewhat relaxed, it will be noticed that in practically all of such cases the evidence reasonably shows that the ballots were under the control of the auditor. The rule still requires that

after the ballots have been returned to the auditor, they shall not be so exposed to the reach of unauthorized persons, as to afford a reasonable possibility of their having been changed or tampered with. In the case at bar the ballots deposited in the basement vault were so exposed to the reach of unauthorized persons as to afford a reasonable possibility and opportunity of their being changed or tampered with. For ten days they were practically subject to the inspection of all county employees or any one else frequenting the courthouse. Although the auditor gave his 'opinion' that the bags were in the same condition as when first placed in the vault, such testimony was necessarily only a conclusion, as he also said that they might have been changed. It was impossible for him to testify with any reasonable degree of certainty that they were in the same condition, because they were not under the exclusive control of his office during that time. The ballots may not have been tampered with, but that fact was not sufficiently established. The integrity of the ballots could not be preserved by allowing them to be placed within the easy reach of unauthorized persons for a period of ten days. The burden in this class of cases rests upon the contestant to show that there was no reasonable possibility of tampering by unauthorized persons. The contestant failed to meet this burden and the undisputed evidence shows that during those ten days any outsider had easy access thereto. They were no more in the possession of the county auditor during that time than that of the county engineer, the highway commissioner, the janitor, or any other county official. They were easily accessible to all such county officials and also to outsiders frequenting the courthouse. The integrity of the ballots cannot be, jeopardized by allowing them to be within easy access to others for the length of time shown in this record."

In our opinion, the language of the Matzdorff case, above quoted, might be applied almost verbatim to the facts of the instant case. We do not think the evidence in this case was sufficient to show that the ballots were "not so exposed to the reach of unauthorized persons, as to afford a reasonable possibility of their having been changed or tampered with."

The decree of the trial court is, therefore, reversed.

CLAUSSEN, C. J., and all the Justices concur.