W. L. STEEVES et al., Appellants, v. NEW MARKET, Town of, et al., Appellees.

No. 44382.

AUGUST 5, 1938.

Stipe, Davidson & Davidson, for appellants.

Turner & Turner, for appellees.

KINTZINGER, J.—On February 11, 1936, a special election was held in the town of New Market, Iowa, for the purpose of voting upon a municipal electric light and power plant under the Simmer Law, Code of 1935, §6134-d1 et seq., at a cost not exceeding $55,000. The town hall was used as the polling place for the election. The record in the case shows that all necessary preliminary proceedings and posting of notices for said special election were had. The record also shows that judges

and clerks of the election were duly appointed and qualified by the city council and that the special election was held upon the day advertised.

In their petition, appellants allege that the poll books and ballots were never turned over or filed with the town clerk; that the results of the election or tabulations of the votes were not turned over to the town clerk; that there was no canvass of the votes by the town council; that there was no record made by the town council or the town clerk in the proceedings of the council showing any tabulation or record of the votes or the result of the election. Plaintiffs further allege that if the \defendants or any of them claim to have any figures, data, or records with regard to the result of the special election, the same were not properly obtained, made, filed, or preserved within the time or by the proper officers as required by law.

Plaintiffs also allege that the mayor and town council have exceeded their proper jurisdiction and are otherwise acting illegally in their effort to erect and establish a muncipal electric light and power plant in defendant town.

Plaintiffs' petition for a writ of certiorari was filed January 5, 1937. The writ was issued as prayed for and was returnable on January 26, 1937. By the writ defendants were ordered to certify and return fully to the district court of Taylor County on the 26th of January, 1937, a transcript of the records, proceedings, and facts concerning such special election purported to have been held on February 11, 1936, including all proceedings, unused, spoiled, and sample ballots, poll books, minutes, and any and all records of such special election as fully and completely *as the same are now before you.* Under this writ the defendants were ordered to certify all records of the town of New Market in reference to the special election referred to as fully as the same appeared upon the records and proceedings of the town of New Market at that time.

The evidence in this case shows without dispute that at the time the writ was issued and served many and practically all of the legal requirements as to counting, preserving the ballots, announcing the results of the election, canvassing the returns, etc., were not complied with. The return to this writ was not filed until February 25, 1937. Although this return shows that all proceedings up to and including the day of election were had in the manner provided by law, the return and the evidence

shows that no record whatever was made by the town council showing a canvass of the election returns until February 12, 1937, a year and a day after the election, at which time the membership of the town council had changed. At that time a resolution by a new town council was adopted declaring the special election carried. The lower court confirmed the action of the town council in declaring the election valid, and annulled the writ; hence the appeal.

I. One of the errors complained of is that the then town council and its officers did not comply with the order of court to file a return of the transcript of the record of said special election as it appeared on the record of the council proceedings at the time the writ was issued.

This is an action in certiorari and the illegality complained of by appellants is that at the time of the filing of the return, the town was acting illegally because the records of the town and the evidence in the case wholly fail to show that all steps required to be taken after an election had not been taken in this case, and therefore the election was not complete. On the contrary, the return made by the town shows that none of the statutory requirements after the election were taken until more than a year after the election.

Originally evidence outside the record could not be introduced for the purpose of determining whether or not the lower tribunal acted illegally or without jurisdiction. Everett v. Cedar Rapids & M. R. R. Co., 28 Iowa 417; Smith v. Board of Supervisors, 30 Iowa 531; Jordon v. Hayne, 36 Iowa 9.

Under our present statute, however, section 12464 of the Code of 1935, other evidence outside the record can be introduced for the purpose of showing whether or not the lower tribunal acted within its jurisdiction. This statute provides:

"When full return has been made the court must proceed to hear the parties upon the record, proceedings, and facts as certified, *and such other testimony, oral or written, as either party may introduce,* and give judgment affirming or annulling the proceedings, in whole or in part, or, in its discretion, correcting the same and prescribing the manner in which the parties or either of them shall further proceed." (Italics ours.)

Under this statute we have held that other evidence may be permitted. Tiedt v. Carstensen, 61 Iowa 334, 16 N. W. 214;

Rafferty v. Town Council, 180 Iowa 1391, 164 N. W. 199; Hatch v. Board of Supervisors, 170 Iowa 82, 152 N. W. 28; Blodgett v. McVey, 131 Iowa 552, 108 N. W. 239. Under this statute it has been held that in certiorari proceedings the district court is not limited to the actual returns in determining whether or not the inferior tribunal acted without jurisdiction or otherwise illegally; and other evidence bearing on that question is admissible. Lerch v. Short, 192 Iowa 576, 185 N. W. 129; Fronsdahl v. Civil Service Commission, 189 Iowa 1344, 179 N. W. 874. See, however, Dickey v. Civil Service Commission, 201 Iowa 1135, 205 N. W. 961, where this court held on appeal to the supreme court in certiorari proceedings that this court is not permitted to review questions or evidence pertaining to matters not before the inferior tribunal.

The inferior tribunal in this action was the town council, and the undisputed evidence shows that, when it attempted to contract for the plant, the necessary steps to complete the election had not been taken.

The statutory proceedings required to be taken were not in fact taken at the time required by statute, and were therefore necessarily omitted from the record of the council's proceedings, until inserted therein about one year later when they were ante-dated. The council then attempted, more than a year after the election, to take the steps which the statute requires to be done immediately after the election. It will hardly do to say that the requirements of all the statutes referred to in the following division of this opinion can be violated and then after the lapse of a year can be supplied by an entirely different set of officials than those in office the previous year.

It might be claimed that, under some circumstances where minor requirements are not complied with, the election might be complete, but where none of the statutory requirements had been complied with at the time the council acted and when the writ was issued, it must be held that the election was never complete and the council had no jurisdiction. To hold otherwise would be permitting a town council by its inaction to suspend the statutory laws of the state. We are constrained to hold this cannot be done.

II. Assuming, however, for the purpose of argument that it could be done, which we do not concede, and that evidence outside the record might be considered as tending to establish

the jurisdiction of the lower tribunal, appellants further contend that such jurisdiction has not been established by such evidence, as the record shows that the election was not 'complete because of a failure on the part of the town and election officials to comply with the statutory requirements relating to elections as now referred to.

■ 1. Section 840 of the Code of 1935 provides that when the poll is closed the judges shall forthwith and without adjournment: "Publicly canvass the vote, and credit each candidate with the number of votes counted for him."

The record in this case shows without dispute that the judges of election did not publicly canvass the votes as required by the foregoing statute. Under the statute the town clerk was required to, and the evidence shows [he did, deliver the ballots to the judges of election. The record also shows that the town clerk, to whom the election officials were required to return the ballots, and several other citizens and electors of the town were not permitted to remain in the polls to witness the count.

"Where the statute requires that the count shall be public, it is unlawful to count the ballots in a private room from which bystanders are excluded." 20 C. J. 191, section 240; United States v. Badinelli, 37 Fed. 138; Norton v. State, 5 Ga. App. 596, 63 S. E. 666; Bernardo v. Rue, 26 Cal. App. 108, 146 P. 79; Riddell v. Childers, 156 Ky. 315, 160 S. W. 1067.

■ The legislature has power to provide for the manner in which the result of an election shall be determined and declared, and where the legislature has so provided, an election is not complete until the legislative mandate is obeyed. 20 C. J. 191, section 238; People v. Crissey, 91 N. Y. 616.

■ 2. Section 848 provides that ballots not voted or spoiled by the voters shall be returned by the judges of election to the officer charged with their printing and distribution, and a receipt taken therefor, *and they shall be preserved for six months.* In violation of this statute, no ballots were returned by the election officials to the town clerk. The undisputed evidence shows that the ballots were not preserved by him for a period of six months as required by this statute; on the contrary, after the election the ballots were placed in a canvas bag and delivered by one of the judges of election to a druggist in the town, who was in no manner connected in any official capacity with

the town or the election board. They were left with this druggist for three or four weeks when they were taken to the county auditor's office, where they were allowed to remain for almost a year.

3. Section 850 of the Code provides:

"When the canvass is completed one of the judges shall shall publicly announce the total number of votes received by each of the persons voted for, the office for which he is designated, * * * and the number of votes for, and the number of votes against, any proposition which shall have been submitted to a vote of the people."

The record shows without dispute that when the canvass, if any, was made by the judges of election, they failed and neglected to publicly announce the total number of votes cast for or against the proposition to establish a light plant in defendant town.

4. Appellants also contend that the election is invalid because the ballots were not carefully preserved as required by section 851 of the Code. Immediately after making the proclamation as to the result of the election, section 851 provides:

"The judges shall at once return all the ballots to the officer from whom they were received, *who shall carefully preserve them for six months.*" (Italics ours).

The ballots never were returned to the officer from whom they were received. That officer was the town clerk, Mr. Hibsley. The town clerk was present at the polls before the ballots were counted but was requested to leave the room. The evidence shows without dispute that the ballots were never returned to him but were first taken to a drug store operated by a man named Pendergraft, in whose possession they were left for a period of three or four weeks. Pendergraft was not an official of the town or county and had nothing to do with the election.

After they remained in his possession for three or four weeks they were taken to the county auditor's office where they remained for nearly a year, and until this action was started. The town clerk testified that the ballots or books were never turned over to him and were never filed with him by anybody, either at the city hall or his home. He also testified that there were no unused or spoiled ballots turned over to him and that

the results of the election or any tabulation was never turned over to him. He also testified that he did not meet with anyone anywhere to canvass the vote of this election, the next day, or any other time up to the time of the trial. He testified that three or four weeks after the election some member of the city council requested him to take the ballots over to the county auditor at Bedford. Pursuant to this request he called at the drug store where he was advised there was a sack containing the ballots and took it to the county auditor's office at Bedford.

This court has repeatedly held that ballots cast at an election are not admissible as evidence unless it is first shown that the officer legally charged with the custody of such ballots has preserved, guarded, and protected them in such a manner as to reasonably preclude the opportunity of unauthorized persons tampering therewith.

It is conceded by the record that these ballots were not preserved as required by statute; they were first given into the possession of a person not a town official or election officer, and remained with such person for three or four weeks. While they were in his possession the evidence fails to show that no opportunity to tamper with the ballots was presented either to him or to others in his store. Likewise after the ballots were delivered to the county auditor, who was not an officer authorized to receive them, they were allowed to remain with him for almost a year; and the evidence fails to show that no opportunity to tamper with the ballots was presented to him or others while in his possession, he not being authorized to have the custody thereof.

It is a general rule of law in this state that no evidence of the ballots or result of the election is competent unless it is first shown that the ballots have been carefully preserved by the officer dully authorized to receive them after the election. This rule is supported by the following cases: Davenport v. Olerich, 104 Iowa 194, 73 N. W. 603; Mentzer v. Davis, 109 Iowa 528, 531, 80 N. W. 557; Donlan v. Cooke, 212 Iowa 771, 237 N. W. 496; Matzdorff v. Thompson, 217 Iowa 961, 251 N. W. 867; Traeger v. Meskel, 217 Iowa 970, 252 N. W. 108; Stamos v. Gray, 221 Iowa 145, 264 N. W. 919.

In Davenport v. Olerich, 104 Iowa 194, 1. c. 196, 198, 73 N. W. 603, this court said: " 'Before the ballots should be allowed in evidence * * * it should appear affirmatively that

they have been safely kept by the proper custodian of the law; *that they have not been exposed to the public, or handled by unauthorized persons; and that no opportunity has been given for tampering with them.'* \* \* \* onus is on him who would discredit the official count, before resorting to the ballots as the best evidence of who has been elected, to show that these have been preserved with that care which precludes the suspicion of having been tampered with, and the opportunity of alteration or change." (Italics ours.)

In Mentzer v. Davis, 109 Iowa 528, l. c. 531, 80 N. W. 557, l. c. 558, we said:

"Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there is no possibility that they might have been tampered with. To adopt such a rule, would be to exclude the ballots entirely; for we can hardly imagine a case where they might not be tampered with. No safe is so secure as that it may not be unlocked, and no vault so perfect that it may not be entered. What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with."

In Matzdorff v. Thompson, 217 Iowa 961, l. c. 968, 251 N. W. 867, l. c. 870, we said:

"Under this statute as construed by our court, the integrity of the ballots must be protected from any reasonable possibility of their being tampered with. While we have held that it need not be shown there was no possibility that they might have been tampered with, we have also said that: 'What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with.' "

In the case at bar the evidence shows without dispute that the ballots were never turned over to the person authorized to receive them, or that they were always carefully preserved by him. They were never in his possession except while he was taking them to the county auditor's office at the request of one of the aldermen.

5. Section 856 provides that:

"* * * one of the poll books * * * and one of the registration books * * * shall be delivered by one of the judges within two days to the county auditor."

The undisputed evidence shows that this statute was not complied with.

6. Section 857 provides:

"The other of said poll books and the other registration book, if any, shall be forthwith delivered by one of the judges to the township, city, or town clerk, * * *."

The undisputed evidence shows that this statute was not complied with.

7. Section 859 provides that:

"If there are two or more precincts in any township, city, or ward, the trustees and clerk, or the mayor and clerk, as the case may be, shall, on the day after the election, meet and canvass the returns from all precincts * * *."

The undisputed evidence in this case shows that this statute was not complied with. It also shows that no canvass was made by the town council and clerk or mayor until a year and a day after the election. Under the record no canvass was made until after this action in certiorari was commenced, and the canvass made at that time was not made by the officers who composed the town council, mayor, and clerk at the time of the election but was composed of an entirely new set of officers.

The record also shows that there was no record made by the town council or clerk in 1936 after the election, and none was inserted in the council proceedings until more than a year after the election.

■ Owing to the wholesale violation of the statutes in this case, we are inclined to hold that the election was not complete at the time the town council attempted to provide for the establishment of the plant in question.

Without pursuing this discussion further, we are constrained to hold that there was such a gross violation of all the statutory requirements after the election as to invalidate the proceedings of the town council in attempting to let a contract thereunder.

We have not been favored with a brief by appellees, but

notwithstanding this fact we have given the matter careful consideration, and for the reasons hereinabove expressed we have come to the conclusion that the judgment of the lower court was not correct, and the same is therefore hereby reversed with instructions that the writ of certiorari be sustained.—Reversed and remanded.

SAGER, C. J., and MITCHELL, MILLER, HAMILTON, ANDERSON, and DONEGAN, JJ., concur.