FRED WIEDENHEFT, Appellant, v. ED FRICK, Appellee.

No. 46303.

52

Merle F. Wells and Chamberlin & Chamberlin, all of Davenport, for appellant.

Harold Thuenen and Alfred C. Mueller, both of Davenport, for appellee.

MULRONEY, C. J.—On April 24, 1942, appellant (hereinafter called contestant) filed with the city clerk of Davenport, Iowa, a statement of intention to contest election, stating that he and Ed Frick (hereinafter called incumbent) :

"* * * were candidates, on the Democratic and Republican tickets respectively, for the office of Mayor of Davenport, Iowa, at the City Election held in the City of Davenport, Iowa, on April 4, 1942. * * *

"That pursuant to law the said election returns were thereafter OFFICIALLY canvassed by the Mayor and City Council of the City of Davenport, Iowa at their regular Council meeting on April 15, 1942, and thereat the Mayor and City Council officially declared the INCUMBENT duly elected over the CONTESTANT to the office of Mayor of the City of Davenport, Iowa by a majority of 58 votes out of a total of 6219 votes cast for the INCUMBENT and 6161 votes cast for the CONTESTANT."

The filed statement, and amendments thereto, enumerated several alleged irregularities in the election and acts of misconduct on the part of the election officials and the incumbent, which will be discussed later. The contest court held the incumbent "duly elected" and the contestant perfected his appeal to the district court. The statement of intention to contest election and a new amendment filed in the district court seem to have been considered the petition of contestant in the district court, while an answer filed originally with the contest court was the only answer filed by the incumbent. At this point we cannot refrain from pointing out the inadequate election-contest laws found in chapters 47 and 52 of the Code of 1939. Section 986, making the provisions relating to contesting "elections of county officers" applicable "to contested elections for other offices," well illustrates the vice of a reference statute. We can understand the dilemma of counsel for both parties when faced with the problem of fitting their issues into such inadequate statutory election-contest machinery and we commend them for an excellent presentation of the merits without burdensome formal objections. In the same spirit, we will on this appeal consider all the propositions urged by contestant as a basis for the contest which were listed in his statement of intention to contest election and argued in his brief and argument in this court.

I. Contestant's first proposition is that the evidence of misconduct and corruption on the part of the election judges was sufficient to change the election results. There was absolutely no evidence of corruption, and the only evidence of misconduct which we can find in the record, and the only evidence pointed out by counsel for contestant in support of this proposition, is the evidence which relates what occurred at the third precinct of the second ward. The record shows that in this precinct the judges opened twelve absent-voters' ballots and voted them during the noon hour, contrary to section 950, Code of 1939, providing that absent-voters' ballots shall not be voted until after the polls close. The voting place in this precinct was across the hall from a tavern, and one witness testified that, while she and a companion were in the tavern, a relative of incumbent approached them and bought each of

them a drink and gave them a card and asked that they vote for incumbent. This witness stated that the tavern was about ten feet from the voting place; that she saw one of the election judges in the tavern at the time; and that she had already voted before going into the tavern. The incumbent carried this precinct by ninety-six votes.

We cannot find in such evidence the misconduct or irregularity sufficient to throw out the vote of the entire precinct. Of course, the voting of the absent-voters' ballots prior to closing was irregular, but it seems to have been done by one democratic and one republican judge, and no complaint is made that they were not cast correctly. Contestant argues that by voting the absent-voters' ballots at noon "They got a peek at how the election was going and then the Republican Voters rushed in a 'worker' to electioneer in the beer tavern across the hall from the Polls." We cannot agree with either the surmise or the conclusion in this argument. It is a little absurd to believe anyone could tell from these twelve absent-voters' ballots "how the election was going" in a precinct where 818 votes were cast. And the only activity of the "worker" who was "rushed in" is the single incident where incumbent's relative solicited a vote from one who had already voted. Such evidence is wholly insufficient to establish misconduct on the part of the election judges "sufficient to change the result" within the provisions of section 981 (1), Code of 1939. Brooks v. Fay, 206 Iowa 845, 220 N. W. 30.

II. Contestant next argues that the trial court erred in refusing to admit in evidence the tallies on certain voting machines used in the election. Here again we find a reference statute making chapter 43, governing the use of voting machines, applicable to other election-law provisions. (See section 926.) Section 985 gives either party the right "in open session of the court * * * to have the ballots opened, and all errors of the judges in counting or refusing to count ballots corrected * * *." Adapting the right here granted to a contested election where voting machines are used would, we feel, grant either party the right to open all the machines in court if there was a sufficient showing that the machines were still locked and sealed and had been preserved in a manner that would preclude reasonable

likelihood of tampering therewith. The trial court was of this opinion and it based its ruling excluding the machines upon the ground that there was not a sufficient showing that the machines were properly preserved as required by law. The evidence showed that the machines were owned by Scott county, and, after the election and before the trial in the district court, forty-five of the seventy-seven voting machines which were used in the city election were turned back to the county auditor for use in the June 1942 primary election. These machines were all opened and turned back to zero and, of course, contained no record of the votes cast for either contestant or incumbent in the earlier city election. In the case of In re Election Contest v. Gray, 221 Iowa 145, 146, 264 N. W. 919, 920, we stated, with respect to the admissibility of ballots in an election contest:

"There are some fundamentals controlling the questions involved that have been fully disposed of in this state. First, the burden of proof is upon the contestant to show the proper preservation of the ballots. Davenport v. Olerich, 104 Iowa 194, 73 N. W. 603; Doak v. Briggs, 139 Iowa 520, 116 N. W. 114; Matzdorff v. Thompson, 217 Iowa 961, 251 N. W. 867. Second, the official canvass is controlling except when the ballots themselves are admissible in evidence to overthrow the same. De Long v. Brown, 113 Iowa 370, 85 N. W. 624; Brown v. Crosson, 115 Iowa 256, 88 N. W. 366.

"If the ballots have not been properly preserved they are not admissible in the contest court, nor in the district court. We have pronounced this rule so often in numerous cases that it is necessary only to refer to the first case, Furguson v. Henry, 95 Iowa 439, 64 N. W. 292, and to the last case, Traeger v. Meskel, 217 Iowa 970, 252 N. W. 108, where our previous cases on this proposition are cited."

Thus it will be seen that before the voting machines could be allowed in evidence it should affirmatively appear that they are in the same condition that they were when closed and locked by the election judges. Contestant argued that he should have been granted the right to introduce the remaining thirty-two machines which were locked and sealed. The offer was objected to on the ground that these machines were not shown to have

been properly kept so that the opportunity for tampering was guarded against. Incumbent's chief argument is that these machines were left at polling places after the election where they were exposed to the public. We believe a prima facie case of proper preservation would be made out, even if the machines were at polling places, if they were properly locked and sealed and the key turned over to the city clerk and kept by him until the time of trial. In regard to the rule as to preserving the ballots, we said in Mentzer v. Davis, 109 Iowa 528, 531, 80 N. W. 557, 558:

"Of course, this does not mean that they must be proven genuine beyond all suspicion, however groundless, nor that there is no possibility that they might have been tampered with. To adopt such a rule, would be to exclude the ballots entirely; for we can hardly imagine a case where they might not be tampered with. No safe is so secure as that it may not be unlocked, and no vault so perfect that it may not be entered. What is meant is that they shall not be so exposed to the reach of unauthorized persons as to afford a reasonable possibility of their having been changed or tampered with."

See, also, Matzdorff v. Thompson, 217 Iowa 961, 251 N. W. 867.

But the evidence of what the thirty-two machines that were locked and sealed would disclose would not be admissible under this record. The statute (section 985) states that the parties shall have the right to have the "ballots opened" in court. The official canvass is controlling except when the ballots themselves are admissible in evidence to overthrow the canvass. In re Election Contest v. Gray, supra. There is no question of the official canvass in this case. As we earlier pointed out, contestant concedes in his contest statement that incumbent was duly declared elected after the official canvass. Since this official canvass could not be overthrown by admitting the ballots, on about forty per cent of the voting machines, even if the evidence was clear that they had been kept inviolate, then the offered evidence was rightly excluded.

The machines should have been preserved. Section 854,

Code of 1939, provides that when a contest is pending "* * * the ballots shall be kept until the contest is finally determined * * *." It was the duty of the city clerk to preserve the machines until the contest was decided. But here we can only criticize. The fact that he did not do so does not change the rule of admissibility of the machines or ballots in evidence. Indeed, in most of the cases where ballots have been excluded from evidence in an election contest, the record showed that some election official failed to perform his duties with respect to properly preserving the ballots. See Doak v. Briggs, 139 Iowa 520, 116 N. W. 114; Steeves v. Town of New Market, 225 Iowa 618, 281 N. W. 162.

 III. Contestant argues that the evidence showed a promise of appointment made by the incumbent for the purpose of procuring his election. Section 837 of the Code of 1939 provides:

"It shall be unlawful for any candidate * * * to promise, either directly or indirectly, to support or use his influence in behalf of any person * * * for any position, place, or office, or to promise directly or indirectly to name or appoint any person * * * to any place, position, or office in consideration of any person * * * supporting him or using his * * * influence in securing his * * * election * * *."

The violation of the foregoing statute is made a misdemeanor by section 839. One of the grounds in an election contest is that "the incumbent * * * offered to any elector * * * reward * * * or thing of value, for the purpose of procuring his election." (Section 981 (4), Code of 1939.)

The evidence showed that, at a meeting of republican women, the incumbent, who was then acting mayor, "pointed with pride" to the police department and stated that, if elected mayor, he would reappoint Reed Phillips as chief of police. Reed Phillips had been chief of police four years.

There was no evidence that the promise to reappoint Reed Phillips was made in consideration of any person's supporting incumbent's candidacy. Indeed, contestant only argues that "The incumbent knew that Reed Phillips was a popular policeman who was liked by the voters and the Incumbent made the

58

promise to get votes to procure his election." In answer to contestant's argument that this evidence made it necessary for the court to determine incumbent was not lawfully elected, the trial court, in its excellent opinion, stated:

"It would be strange indeed if one seeking the office of Mayor could not commend or condemn the conduct of street commissioners, chiefs of police and other appointive officers coming in general contact with the public and it would be equally strange if one seeking the office of Mayor could not publicly declare his intention to offer to a satisfactory employee an opportunity to continue in the discharge of his duties, if the result of the election permitted the candidate to do so. The sections alluded to are intended to prevent fraud, bribery and corruption. * * * They were not intended to preclude anyone from making any honest and honorable bid for preferment by the electorate."

We agree with the trial court's conclusion on this issue.

IV. Contestant's final proposition is directed to the use of voting machines in this election. He contends the election was void in that the use of said machines had never been authorized by the city council and because they were not owned by the ,city of Davenport. The record shows that the voting machines were used in city elections since 1937, and the city clerk merely testified that there was not "any formal resolution or city ordinance" authorizing "the use of the machines in the election of April 4, 1942," and he had no knowledge of an "ordinance authorizing the adoption or ordering the use of the machines at a city election." The clerk further testified that they merely followed the "usual procedure." Section 905 of the 1939 Code of Iowa provides as follows:

"The board of supervisors of any county, or the council of any incorporated city or town in the state may, by a two-thirds vote, authorize, purchase, and order the use of voting machines in any one or more voting precincts within said county, city, or town, until otherwise ordered by said board of supervisors or city or town council."

We feel that the evidence fails to show that the city council

took no action on the matter. The most that the evidence establishes is that the clerk knew of no ordinance or resolution authorizing the use of the machines. But even though no action was taken by the city council to authorize the use of voting machines, we feel such use would be valid. Either the city or county may purchase or order the use of voting machines. If a city purchases them, they may be used within the city in all elections, regardless of whether the election be a city, county, or state election. If a county purchases them, then the county may authorize the use of them in all elections within the county without any further authorization by the smaller units of the county, such as a city.

Although we have chosen to consider the proposition urged that the election was void because of the use of voting machines, we desire to point out that none of the grounds enumerated in section 981 could be construed to include the ground that voting machines were used instead of paper ballots. And, moreover, there is no showing that the use of the machines affected the result or in any way prevented the voters from giving full expression to their will or desires. In the case of Younker v. Susong, 173 Iowa 663, 670, 156 N. W. 24, 27, where the argument was that the election was void because paper ballots were used instead of voting machines, we said:

"Statutes prescribing the mode of proceeding of public officers are regarded as directory unless there is something in the statute which shows a different intent. In the instant case, the electors were not to blame for the failure of the officers to provide voting machines and booths; but the mistakes, if any, were those of the officials. Under such circumstances, prejudice must be shown in order to defeat an election fairly held. Kinney v. Howard, 133 Iowa 94, 103."

We have noticed all the points relied upon by contestant, and our conclusion is that the judgment of the trial court was right and it is affirmed.—Affirmed.

All JUSTICES concur.